## SARAH WOODS

*v.*

## MARY EVANS *et al.*

*Filed at Mt. Vernon February 5, 1885.*

1. SPECIFIC PERFORMANCE—*whether matter of right.* The specific performance of a contract in equity is not a matter of right in the party seeking it, but a matter of sound discretion in the court, which may grant or deny relief, as may appear equitable under all the facts and circumstances of the case.

2. SAME—*as to certainty and fairness—and of the consideration.* A contract which is not certain, or which is not fair and just in all its provisions, will not be specifically enforced in a court of equity.

3. The only significance of a contract to adopt one as an heir, or to give him a child's part, being to secure a right to property, it is too uncertain as to the amount of property to be reached by it to be specifically enforced, in equity, against the heirs of the party making the same.

4. A contract by one having at the time an estate of the value of $20,000, and a wife living, but no children, to take, maintain and educate an orphan girl, eleven years old, and for her services until she should attain the age of eighteen years to leave and give to her, at his death, a child's part of his estate, is not based upon a sufficiently adequate consideration, and can not be regarded as so fair and just and certain as to be specifically enforced.

5. SAME—*of the evidence to prove contract.* Where an attempt is made to effect a distribution of property of an estate different from that provided by law, under a contract resting in parol, or to be established by parol evidence, as, where the contract is lost or destroyed, the evidence relied upon should be looked upon with jealousy, and weighed in the most scrupulous manner.

APPEAL from the Appellate Court for the Fourth District; —heard in that court on appeal from the Circuit Court ·of St. Clair county; the Hon. AMOS WATTS, Judge, presiding.

Mr. R. F. WINGATE, and Mr. J. B. BOWMAN, for the appellant:

The contract is not uncertain. A "child's part" of an estate imports as large a part, or such share, of the estate of the deceased as a child would take under the Statute of Descents.

The generality of express provisions is supplied and obviated by implications of the law. Pomeroy on Specific Per. sec. 161.

A party may bind himself to dispose of his estate, and it will be enforced against his heirs after his death. *Leeders* v. *Austry,* 4 Ves. 501; 3 Sandf. Ch. 279; 41 N. Y. 485; 30 Mo. 396; *Gupton* v. *Gupton,* 47 Mo. 40; *Johnson* v. *Hubbell,* 10 N. J. Eq. 335; *Sutton* v. *Hayden,* 62 Mo. 101.

A contract to make mutual wills, for like reasons will be enforced if one of the parties has died having made a will in conformity with the contract, and the survivor has enjoyed the benefit of the will thus made. Story's Eq. sec. 785; *Dufour* v. *Pereria,* cited in *Walpole* v. *Oxford,* 3 Ves. 412; Newell on Contracts, chap. 6, p. 711; *Hinch* v. *Simmons,* 4 Ves. 160; Fry on Specific Per. sec. 678.

Mere inadequacy in price or subject matter of the contract will not prevent the enforcement of a contract. Pomeroy on Specific Per. secs. 192-195; *Viele* v. *Troy & Boston,* 21 Bart. 381; Adams' Eq. (6th Am. ed.) 78, 79.

Short's promise operated as a continuing request, and compliance with the request on the part of the complainant was a sufficient consideration for the promise. 2 Smith's Leading Cases in Eq. 1082; *Railroad Co.* v. *Evans,* 6 Gray, 26; *Perkins* v. *Hadsell,* 50 Ill. 216.

A parol promise by a father to convey to a child when the child takes possession and makes valuable improvements, will be enforced. *Kurtz* v. *Hibner,* 55 Ill. 514; *Bright* v. *Bright,* 41 id. 97; *Bohanon* v. *Bohanon,* 96 id. 591. And a promise in consideration of personal services is enforcible in equity. *Warren* v. *Warren,* 105 Ill. 576; Story's Eq. Jur. sec. 761; *Allen* v. *Cerro Gordo County,* 40 Iowa, 349; *Cooper* v. *Pena,* 21 Cal. 404; Pomeroy on Specific Per. secs. 167-172, note 1.

Complainant does not claim as an heir, but under a contract, and hence *Keegan* v. *Geraghty,* 101 Ill. 26, has no application.

That a specific performance is governed by fixed principles, and not by an arbitrary discretion, see *Hetfield* v. *Willey,* 105 Ill. 286.

Mr. M. W. WEIR, and Mr. W. C. KUEFFNER, for the appellees:

The contract is not mutual, and therefore can not be enforced. Pomeroy on Specific Per. secs. 162-166.

Specific performance rests upon a sound legal discretion. *Railroad Co.* v. *Schoeneman,* 90 Ill. 258; *Alexander* v. *Hoffman,* 70 id. 114; *Morse* v. *Jones,* 73 id. 508.

The contract must be founded on a good consideration, and it must be reasonable, fair and just. *Lear* v. *Choteau,* 23 Ill. 39; *Stone* v. *Pratt,* 25 id. 25; *Fish* v. *Lear,* 69 id. 394; Pomeroy on Specific Per. secs. 175, 179, 185.

The contract must not be uncertain in any of its parts. *Bowman* v. *Cunningham*, 78 Ill. 48; *Gosse* v. *Jones*, 73 id. 508; Pomeroy on Specific Per. sec. 157; Story's Eq. Jur. secs. 764, 767.

A "child's part" is vague and uncertain as to the share or interest to be taken. *Wallace* v. *Rappleye*, 103 Ill. 249; *Graham* v. *Graham*, 31 Pa. St. 475.

Mr. Justice Craig delivered the opinion of the Court:

This was a bill in equity, brought by Sarah Woods, to enforce the specific performance of an alleged contract with one John Short, now deceased. A second amended bill was filed, to which a demurrer was sustained, and the complainant electing to stand by her bill, the court ordered the bill dismissed. The question for determination is the sufficiency of the bill.

It is alleged in the bill that on the 20th day of May, 1847, the complainant was an infant orphan, eleven years of age, and the inmate of a charitable institution in the city of St. Louis, and under the immediate charge of Sister Benedicta; that one John Short, who then was a married man, childless, but possessed of property of the value of about $20,000, applied to the institution to take her into his service and employment; that thereupon, to-wit, on the 20th of May, 1847, at said city of St. Louis, at the special instance and request of said Short, and by and with the consent of said Sister Benedicta, and of her, the complainant, a contract, in writing, was then and there entered into by and between said Short and the complainant, and signed by him by his mark, and by said Sister Benedicta on the part of the complainant; that by the terms and stipulations of the contract it was understood and agreed by and between said Short and the complainant, in substance and to the effect, that she, the complainant, should enter into the service of him, said Short, and with him live and continue to live from thence to and until

she should become eighteen years of age, and that for and during all that time she should well and faithfully serve and obey him, said Short, as a good and orderly servant and as a dutiful child should, in all respects, and in all such lawful business and employment as she should be put to do or perform by the direction or command of him, said Short; and that in consideration of the promises and undertakings so to be done, fulfilled and performed by the complainant, he, Short, undertook and faithfully promised the complainant to take her from said institution into his service, adopt her into his family, support, maintain, educate and instruct her in all the employments and business in which females were ordinarily occupied, and leave and give her, at his death, a child's part of his estate. The bill further alleged that the complainant performed the matters on her part to be kept, and that when Short died, in the year 1877, he left a large estate, of the value of about $25,000, the bulk of which, after some minor bequests, he, by his last will and testament, devised to his sisters and niece. It is also alleged in the bill that the contract, when it was entered into, was placed in the hands of Short, for safe keeping, but that (the complainant believing, charged the fact to be,) the contract has been lost or destroyed, and that she can not produce it to the court, or make it a part of her bill. The complainant, among other things, prays that the estate, real, personal and mixed, that may remain after the payment of all claims allowed against it, and the said items of $200 and $100 to the priests, shall be decreed to and be vested in her, and for such other and further relief in the premises as might seem fit, and to justice and equity appertain.

The specific performance of a contract, in equity, is not a matter of right in the party, but a matter of sound discretion in the court, which may grant or deny relief, as may appear equitable under all the facts and circumstances of the case. (Story's Eq. Jur. sec. 769.) A contract which is not certain,

and which is not fair and just in all its provisions, will not be specifically enforced, by decree, in a court of equity. Story, in the section *supra*, says: "An agreement, to be entitled to be carried into specific performance, ought to be certain, fair and just in all its parts." It is also a well settled doctrine, where an attempt is made to effect a distribution of property different from that provided by law, by a contract resting in parol, the evidence relied upon to establish such a contract is looked upon with jealousy, and should be weighed in the most scrupulous manner. (*Wallace* v. *Rappleye*, 103 Ill. 229.) Here, the contract set up in the bill is nothing more than a verbal contract. It is alleged that the contract was reduced to writing, but it has been lost or destroyed. The contents of the agreement will have to be established by parol evidence, and it stands in no better light and occupies no better position than it would occupy if it had never been reduced to writing.

The contract set up and relied upon in the bill is very peculiar. By its terms and provisions, as set out in the bill, Short, who, at the time of the making of the contract, was worth about $20,000, agreed to adopt complainant into his family, support, educate and instruct her in all the employments and business in which females were ordinarily occupied, and leave and give her, at his death, a child's part of his estate. The compensation which Short was to receive for what he undertook to do, was seven years' service. Complainant was to serve him from the time she was eleven years of age until she arrived at the age of eighteen years. While it may be true that the services agreed to be rendered might be regarded as a sufficient consideration to support an agreement to make one an heir, or to bestow upon such a person a certain share of an estate, yet it is apparent that the services agreed to be rendered, here, could in no just sense be regarded as an equivalent for the property agreed to be given. On the other hand, it is plain to any person of ordinary intel-

ligence that the support and education would fully compensate complainant for all the services agreed to be rendered; but, notwithstanding this, if a specific performance of the contract set out in the bill should be decreed, she will receive, in addition to what she has already received, quite a large fortune. Under such circumstances, can the contract be regarded as fair and just in all its parts?

In the circuit court it was held that the clause of the agreement that Short would leave and give complainant, at his death, a child's part of his estate, taken in connection with the other provisions of the agreement, merely required him to adopt the complainant as a child, and that after his death she would have the same rights that a child would have had if he had died leaving children. If this is the proper construction to be placed on the agreement, complainant would not be entitled to any portion of Short's estate, as a person always has the right to dispose of property by will, regardless of the claims of children. It will not, however, be necessary, here, to determine whether or not this is the proper construction to be placed on the agreement. If the language employed leaves the intention of the parties who executed the contract, in doubt, or if there is uncertainty in regard to what was intended, a court of equity will not undertake to decree a specific performance. In speaking upon this subject, Story (sec. 767) says: "If they (the contracts) are not certain in themselves, so as to enable the court to arrive at the clear result of what all the terms are, they will not be specifically enforced. It would be inequitable to carry a contract into effect where the court is left to ascertain the intentions of the parties by mere conjecture or guess, for it might be guilty of decreeing precisely what the parties never did intend or contemplate." In *Wallace* v. *Rappleye*, 103 Ill. 249, where a bill was filed by an illegitimate child to enforce an agreement made by the father to make the child an heir, it was held that the uncertainty of a contract to make one an heir,

as to the amount of property to be affected, is a circumstance to be considered by the court. It is there said: "The only significance of a contract to make one an heir, is in securing a right to property. But what is the amount of property involved in such a contract? How much interest will be left to be inherited? Such a contract existing, suppose Wallace in his lifetime had given away his property, or made a will of it to his two lawful children, or others, would that have consisted with the right under the contract? And if not, how much of this property might he have given away or devised away, and how much must he have retained to satisfy the contract? The contract would be uncertain as to the amount of property reached by it. This is a circumstance to be considered in the exercise of the discretion of the court as to decreeing specific execution."

If a contract to make one an heir is to be regarded uncertain, it seems plain that a contract or a promise to give a child's part of an estate to a person, must, upon the same principle, be held to be uncertain. What is a child's part of an estate? Is a child's part one-tenth, one-fifth or one-third of the property belonging to a person at the time of his death? What share a child may be entitled to receive after the death of a father, will always depend upon a variety of circumstances. If a man dies intestate, leaving ten children, a child's part of the estate would be one-tenth, after the payment of all debts. If five children were left, a child's part would be one-fifth of the estate. Should there be a widow left surviving the decedent, she would be entitled to one-third of the personal estate, absolutely in her own right, and one-third of the lands during her natural life. A child's part would, in such a case, be materially affected by the fact whether or not a widow survived. Again, should the property be disposed of by will, duly executed as provided by law, to some charitable institution or to a college, there would be no child's part for distribution. It seems plain that the amount

of property which may be embraced under the term "child's part," is quite indefinite and uncertain. A child's part may be nothing, or it might be more or less, always depending upon various circumstances. At the time the agreement set out in the bill was made, what portion of Short's property was complainant entitled to receive, under the contract? Was it one-third, a fourth, a fifth or a tenth? The answer is obvious. The contract is so uncertain that it is impossible to determine what amount of property, or what part of Short's property, the contracting parties intended should pass to complainant under it. Under such circumstances, the specific performance of the contract can not be enforced in a court of equity.

There is another serious objection to the enforcement of the contract in a court of equity. Its enforcement would work great injustice to the wife and lawful heirs of Short. At the time the agreement was made, Short had a wife, but no children, and upon his death, under our laws, after the payment of debts, his wife would be entitled to all his personal estate and one-half of his real estate. This right of the wife could not be cut off by any will Short might make,—and yet, if this contract is to be enforced, the wife would be deprived of inheriting as an heir of the husband, and would be compelled to accept, merely, dower in her husband's estate. This would be oppressive, and manifestly unjust to the wife. It is true, in this case the wife died before the husband; but that does not change the principle involved. It is enough that the enforcement of a contract of this character may be productive of injustice to others. When such results are to follow, it ought not to be enforced in a court of conscience.

Other questions have been raised, but it will not be necessary to consider them here.

After a careful consideration of the whole record, we think the decision of the Appellate Court correct, and it will be affirmed.

*Judgment affirmed.*