SADIE K. DUNSHEE, Appellee, *vs.* JOHN DUNSHEE, Appellant.

*Opinion filed October 26, 1912.*

CONTRACTS—*a contract to devise or convey property must be absolute in its terms.* A contract, made without adequate consideration, to devise or convey farm land provided the promisee would make a success of farming it and no unknown cause should turn up to prevent, is too vague and uncertain to be capable of specific enforcement if the promisor fails to make the devise or conveyance, and is not such a contract as will bar the right of the promisor's widow to take half of the land, under the statute, after renouncing the will of her husband, which devised the land to the promisee, there being no acts on her part constituting an estoppel.

APPEAL from the Circuit Court of Carroll county; the Hon. O. E. HEARD, Judge, presiding.

HENRY MACKAY, for appellant.

FRANKLIN J. STRANSKY, for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

Robert Dunshee died testate on March 2, 1910, at his home in Carroll county, Illinois, leaving surviving him his widow, Sadie K. Dunshee, but leaving no children or descendants. By his last will and testament, executed January 26, 1910, he bequeathed to his wife $1000 in lieu of her award and devised to her 320 acres of land in fee simple, together with the undivided one-half of the stock thereon. The remainder of his real estate, amounting to about 900 acres, was devised to various relatives. To his nephew, John Dunshee, the appellant, he devised 207 acres of land known in the family as the Smith farm. In August following the death of Robert Dunshee and the probate of his will the widow filed her renunciation, and elected to take, in lieu of her dower in the estate of her husband, one-

half of all the real and personal property which should remain after the payment of the debts. Thereafter she filed this bill for partition, setting up the death of her husband, the execution and probate of his last will and testament, together with her renunciation, and praying for a division and partition of the Smith farm between herself and the appellant. Appellant filed his answer and a cross-bill, in both of which he set up that in his lifetime Robert Dunshee had contracted with appellant, both in writing and verbally, that if appellant would leave his home in the State of Kansas and come to Carroll county, Illinois, and reside on the place known as the Smith farm and make a success of farming it, at the death of Robert Dunshee it should be the property of appellant; that relying on the written statements and representations so made to him he sold his property in the State of Kansas and moved with his family to said farm, where he has resided since that time, and that he claimed said premises to be his by virtue of said promises and the full performance of the contract on his part. The cross-bill prayed that the appellant be decreed to be the owner of the premises in fee, divested of any claim of said Sadie K. Dunshee. The issues were joined and the cause referred to the master in chancery to take the proof and report the same without his conclusions.

A number of questions have been raised by the parties in reference to the procedure adopted upon the hearing and as to the competency of some of the testimony taken, but in the view we take of the case we will not pass on those questions.

The evidence discloses that for some time prior to November, 1907, the appellant, John Dunshee, resided with his family near Douglas, in the State of Kansas. He had been engaged in farming at that place with rather indifferent success. The only property which he appears to have owned at that time, aside from a few head of horses and cows and some farming machinery, was some land in the

State of Texas. On November 11, 1907, Robert Dunshee wrote appellant and his wife a letter, apparently in answer to letters which had been received from them. After giving them some information about the condition of affairs in Illinois and the doings of his various relatives, he refers to a request which had been made to him by the wife of appellant to loan them money with which to buy "Mrs. Wright's place." After explaining to them that his money was all loaned out he addressed himself directly to appellant, and told him that the Smith farm, which he referred to as containing 210 acres, was in the possession of a tenant under a lease which would expire in about two years. He described the farm and the extent of the operations of the tenant and the prospects for making money on it. He then advised appellant to sell his Texas land some time in the following summer or fall and come to Illinois and take this farm. The letter then contains this statement: "If you make a success at farming it, unless some unknown cause should turn up, after my death to be your home,— that is, if you, John Dunshee, makes a success farming it. Please don't say anything about this what I have written to you. · Now please write me what you will do about it. If you can't sell your farm I will try and set you up and you can pay me as Slager has." Slager was the tenant then in possession of the farm. Appellant testifies that in due time he wrote to his uncle and accepted his proposition. Only one other letter written by Robert was introduced and it contained no reference to this proposition, except that he gave a more minute description of the condition of the Smith farm. A number of letters written by Sadie K. Dunshee were introduced in evidence, but none of them throws any light upon the question of the alleged contract. The letters written by Mrs. Dunshee cover a period of time from February, 1908, until December 14, 1908, shortly prior to the time appellant removed from Kansas to Carroll county, Illinois. In one of these letters,

written November 29, 1908, she urged the appellant to come at once to the home of Robert Dunshee and live with them and assist them through the winter months. In the meantime Robert Dunshee had arranged with the tenant, Slager, to deliver up possession of the farm March 1, 1909, one year before the termination of the lease. John Dunshee removed with his family to Carroll county in the latter part of December, 1908. Having secured a house in which his family could live during the winter, he stayed with his uncle and aunt until he secured possession of the Smith farm on the first of March following. During that winter he assisted his uncle, who was then in somewhat feeble health, in doing his chores, getting up his firewood, putting up ice, and doing such odd jobs as were necessary to be attended to upon a farm.

Upon the hearing appellant testified that he had received a letter from Sadie K. Dunshee, written in the latter part of November, 1908, which he had lost, and in which she had stated that if he would come up it should be as uncle Robert had said. Mrs. Dunshee denies ever having written such a letter. By the witness Slager, and by various neighbors of Robert Dunshee, it was shown that after John Dunshee returned from Kansas and took possession of the Smith farm Robert Dunshee made such remarks as, "I give him this place;" "I have given this to my nephew;" that when he was done with it the place was to go to John; that John was to have the farm; that John would have to carry the place on in a good, workmanlike manner, making him (Robert) a little money, and that when he got through with it he was going to give it to John,—referring in these conversations to John Dunshee and to the farm in question.

The evidence tends to show that when John Dunshee took possession of the farm he was assisted largely by Robert Dunshee in stocking it and equipping it for the necessary farming operations, and also that this was done under an arrangement whereby John Dunshee was to re-pay

his uncle for the advancements so made. Appellant took possession of the farm under an agreement to pay Robert Dunshee one-half of the proceeds thereof. Robert Dunshee was to pay the taxes on the farm, and did so. Appellant had been in possession of the farm just one year when Robert Dunshee died, and had made no improvements whatever upon it, and so far as the evidence discloses had expended no money with reference to it, except that at the request of Robert Dunshee he built a machine shed at an expense of from $25 to $40.

Upon the hearing the court entered a decree dismissing the cross-bill and ordering a partition and division of the real estate according to the prayer of the original bill, and from that decree appellant has perfected this appeal.

Appellant insists that he entered into a valid contract with Robert Dunshee for the conveyance of the real estate in question, and that as he had fully performed his part of the contract he is entitled to the property free from any claim on the part of the widow of Robert Dunshee. If the contract be a valid and binding one, the most that can be said for it is that it was but a promise to devise this property to the appellant. This Robert Dunshee has done. Were this a valid contract, the only question that would remain to be determined would be whether Sadie K. Dunshee, as the widow of Robert Dunshee, is bound by the contract, or whether, as appellant claims, she is estopped by her actions to claim any part of this property. In the view we take of it the contract is not such a one as can be enforced in equity. It will therefore be unnecessary to determine whether or not Sadie K. Dunshee would be bound by it as the widow of Robert Dunshee.

Appellant relies principally upon the letter of November 11, 1907, to sustain his contention. The first part of this letter is a clear offer of rental to appellant. Then follows that part upon which appellant relies as constituting the contract. The language employed in this part of the

letter is exceedingly vague and uncertain. As to whether or not Robert Dunshee should ever devise or convey this farm to appellant he makes dependent upon two contingencies: First, if John Dunshee should make a success of farming it; and second, if no unknown cause should turn up. It is not claimed that any payment was demanded or expected of John Dunshee or that any service was required on his part. It is true that he left his former home in Kansas a little sooner than he had intended and came to live with his uncle during the winter months prior to taking possession of the farm, but this was pursuant to a request on the part of Sadie K. Dunshee made a year after the offer of Robert Dunshee and long after appellant testifies that the same had been accepted. The record does not disclose that any consideration whatever passed from the appellant to Robert Dunshee, except the building of a machine shed at an expense of from $25 to $40. The ordinary relation of landlord and tenant existed between appellant and his uncle. Rental was paid to Robert Dunshee during his lifetime, and after his death the balance remaining due was paid to his executor.

This is not such a contract as equity will enforce. "A contract in relation to the making of a will, which can have specific performance decreed, must be absolute in its terms." (*Barrett* v. *Geisinger,* 179 Ill. 240.) "A contract which is not certain, and which is not fair and just in all its provisions, will not be specifically enforced, by decree, in a court of equity." (*Woods* v. *Evans,* 113 Ill. 186.) "Like all other contracts, there must be an adequate consideration for such contract or it is not enforceable." *Barrett* v. *Geisinger, supra.*

Whether John Dunshee would make a success farming this land or whether some unknown cause would turn up which would prevent the conveyance or devise of this land to him were matters which could not be foretold at the time the alleged contract was made. The contract is

so vague and uncertain and so lacking in consideration that had Robert Dunshee failed to make the devise which he did make to John Dunshee, appellant would be unable to enforce the alleged contract.

Appellant contends that by her own actions appellee should now be held to be estopped from claiming any part of this land. We have examined the whole of this record and carefully read the letters of appellee which were introduced in evidence and find no basis for this contention.

The decree of the circuit court was proper and is affirmed.                                        *Decree affirmed.*