Mittis J. Tanner *et al.* Appellants, *vs.* Faun Tanner *et al.* Appellees.

*Opinion filed June 22, 1927.*

1. Partition—*what necessary to confirm parol partition agreement.* Before a parol agreement for partition will be confirmed it must be shown by clear and satisfactory evidence that the agreement is for a valuable consideration, that it is reasonably certain as to subject matter, that it is equitable and just, and that it was followed by possession.

2. Same—*party seeking partition must be owner of undivided interest.* It is essential to the right of a complainant to partition that he show that he is the owner, jointly, as a tenant in common or in coparcenary with the parties against whom he seeks partition, of an undivided interest in the premises described.

3. Same—*widow, having only a dower interest, is not entitled to partition—cross-bill.* A widow having only a dower interest in land has no estate therein until assignment of dower, and she cannot, either by the common law or the statute, subject the land to partition; and although a decree finds that an infant daughter and heir, by guardian *ad litem,* has adopted her mother's answer and cross-bill asking for partition and there are indications in the record that the cause was treated by the parties as if that had been done, where it is not shown either in the abstract or the record that the daughter did so, relief cannot be granted on the cross-bill where the mother had only a dower interest, especially where it is not shown that partition is for the best interests of the infant.

4. Contracts—*evidence to establish parol contract for distribution of estate should be carefully weighed.* Evidence relied upon to establish a parol contract affecting a distribution of property different from that provided by law or by will is looked upon with jealousy and should be weighed in the most scrupulous manner.

5. Same—*party receiving benefit of a contract made through fiduciary relationship must prove it was just and fair—presumption.* Where a fiduciary relation exists, the dominant party, who receives and seeks to retain the benefit of an agreement made under such relationship, must show that the agreement was just and fair, regardless of the question of the existence of actual fraud, undue influence or coercion, as courts indulge the presumption that all transactions between parties occupying confidential relations by which one obtains an undue advantage of the other are fraudulent.

6. JUDGMENTS AND DECREES—*recitals in a decree must be supported by record.* A decree in chancery must be based upon the record in the case and not upon assumptions of counsel, and if the decree contains recitals which are not supported by the record such recitals must be disregarded.

APPEAL from the Circuit Court of Clay county; the Hon. F. R. DOVE, Judge, presiding.

SMITH & SMITH, and NOLEMAN, SMITH & DALLSTREAM, for appellants.

HAROLD S. WILLIAMS, guardian *ad litem,* for appellees.

Per CURIAM: Appellant Mittis J. Tanner filed a bill to confirm a parol partition of lands under an agreement alleged to have been made by her and her children, James C. and Ruby Tanner, later Ruby Campbell. The property involved was the estate left by James M. Tanner, who died in 1914, leaving a will, the fourth clause of which provides as follows:

"*Fourth*—After the payment of the amounts above mentioned and as stipulated, it is my will that the remainder of said estate, both real and personal, shall be and remain the absolute property of my beloved wife, Mittus J. Tanner, for her sole use. After my daughter, Ruby Tanner, and my son, James C. Tanner, shall arrive at the ages of eighteen and twenty-one, respectively, it is my will that whatever estate, both real and personal, shall remain in the hands or possession of my said wife, Mittus J. Tanner, shall be divided in equal parts between my said wife, Mittus J. Tanner, my said daughter, Ruby Tanner, and my said son, James C. Tanner. And in case of the death of my said wife, Mittus J. Tanner, before my said daughter, Ruby Tanner, and my said son, James C. Tanner, or either of them, shall arrive at the ages of eighteen and twenty-one, respectively, it is my will that the remainder of said property, both real and personal, shall be and remain the prop-

erty of my said children, Ruby Tanner and James C. Tanner, in equal parts."

Mittis J. Tanner was nominated executrix, and the bill alleges that on the 7th day of August, 1916, (the day upon which James C. Tanner became twenty-one years of age,) there was a meeting at the Tanner residence, attended by Mittis J. Tanner, her daughter, Ruby, then above the age of eighteen, and her son, James C., and that by mutual agreement the property was divided.

James M. Tanner died seized of three tracts of land. One tract consisted of 163 acres, called the home farm, where the family resided. A portion of this farm was overflow land and not tillable. A second tract consisted of 90 acres of upland, across the hard road from the home farm. This land was rough and rolling, only a portion of it being tillable. It carried no improvements. The third tract consisted of 67 acres near the home farm and contained a walnut grove, known as picnic grounds. It does not appear that this land was in any way tillable. The city property consisted of two residences in Louisville, Illinois, known as the Harrison and Reynolds places, a store building known as the Odd Fellows building, an undivided one-fifth interest in the Metropolitan Hotel building, and two vacant lots in a subdivision of Louisville known as Buttonville. These lots were of very little value.

The bill alleges that by the terms of the parol partition agreement Mittis J. Tanner was to get the home farm and the Odd Fellows building, Ruby the 67-acre farm, the Harrison property in town, one-half interest in the hotel property and one of the vacant lots, and James C. the 90-acre farm, the Reynolds property, the remaining one-half interest in the hotel property and the other vacant lot; that after such division had been made the parties each took possession of the several properties they were to receive under such division and thereafter paid the taxes on the property and received the income therefrom. The bill then sets out

that about two years and four months later James C. died, leaving a widow, appellee Faun Tanner, and one child, Margaret Jane Tanner, an infant; that after the death of James C., Faun Tanner, with the guardian of such infant, collected the rents from the property her husband was to receive. The bill prayed that the parol partition be confirmed and that the defendants be directed to make the necessary deeds, in default of which the same to be executed by the master in chancery. Faun Tanner filed an answer denying the allegations of the bill, and filed a cross-bill praying partition of the lands on the basis of the interests conveyed by the will of James M. Tanner. The chancellor entered a decree in which he found jurisdiction of the parties and the subject matter; that the infant, Margaret Jane Tanner, by her guardian *ad litem,* had adopted the answer and cross-bill of her mother, Faun Tanner. The decree dismissed the original bill of Mittis J. Tanner, granted the relief prayed in the cross-bill, and directed an accounting as to the personal property, rents, etc.

The appellants assign as error the dismissing of the original bill, for the reason, as they contend, the evidence clearly established parol partition. The rule is that parol partition will be confirmed where the agreement therefor is shown by clear and satisfactory evidence to be for a valuable consideration, reasonably certain as to subject matter, equitable and just, and is followed by possession. (*Hagen* v. *Anderson,* 317 Ill. 173; *Edwards* v. *Brown,* 308 id. 350; *Bayley* v. *Nichols,* 263 id. 116; *Ralls* v. *Ralls,* 82 id. 243.) The evidence relied upon to establish a parol contract effecting a distribution of property different from that provided by law or by will is looked upon with jealousy and should be weighed in the most scrupulous manner. (*Woods* v. *Evans,* 113 Ill. 186; *Wallace* v. *Rappleye,* 103 id. 229.) There is no evidence contradicting the existence of the agreement but that of Faun Tanner, who testified she had never heard of it, and that Mittis J. Tanner told her after

326—20

the death of James C. that she was managing the property because she was better able to do so. Those testifying to the existence of the agreement were Mittis J. Tanner, Ruby Tanner Campbell, and J. R. Clifton, brother of Mittis J. Tanner. These witnesses testified that such an agreement was made but that no evidence of that agreement was executed at that time. The testimony of appellants and of the witness Ben Hagel, an attorney, is to the effect that on the 7th of August, 1916, Mittis J. and James C. Tanner went to Hagel to have him draw the necessary deeds, but that Hagel told them there was no hurry about it, and no papers were executed. Dr. George Campbell, husband of Ruby, Ben Hagel and Mary E. Clifton, sister of Mittis J. Tanner, testified to conversations with James C. Tanner subsequent to the date of the alleged agreement, in which he stated what property he received in the division and expressed himself as satisfied with it. Objection was made that the testimony of Dr. Campbell and of appellants was incompetent because Margaret Jane Tanner, the minor, defended the suit as an heir of James C. Tanner. Dr. Campbell is not a party to the suit nor a person directly interested in the result thereof and so was a competent witness. Ruby Tanner Campbell and Mittis J. Tanner, on the other hand, were directly interested in the result of the suit and so were incompetent. The hearing was before the chancellor, and it will be presumed that he gave consideration only to the competent testimony which is in the record showing the existence of the agreement.

It is claimed by appellees that the agreement is unjust and inequitable and that a fiduciary relation existed between James C. Tanner and his mother in which she was the dominant influence; that the division was grossly inadequate so far as James C. was concerned; that instead of getting a one-third interest in his father's estate, as provided by the will, Mittis J. Tanner by the arrangement was to have more than three times as much of the estate as was to go to

James C.  The defendants to the original bill offered the testimony of a number of witnesses relative to the value of the home farm and the 90-acre tract, which was to go to James C.; also as to the town property.  It appears from this evidence that the property to be received by Mittis J. Tanner was of about three times the value of that to be received by James C.  The evidence shows, also, that the relationship existing between the mother and the son was very close.  James C. was twenty-one years of age on the day of the agreement.  He was twenty-three when he died. The mother was the manager for the entire family.  Faun Tanner testified that she and her husband lived with the mother from the time of their marriage until his death and that she and the child lived with her for some years after that.  She testified that she did not know there had been a division of the property; that Mittis J. Tanner told her that she was holding the interest of James C. in his father's estate because she was better able to take care of it.  She testified that she received some small amounts of rent from the farm and the sum of five dollars per month from the residence property in town.  The record tended to show that the relationship existing between James C. and his mother was of such character that he would naturally accede to her wishes regarding the division of the property.  One witness testified that he had said that he would be satisfied with a pig-pen if his mother gave it to him.  It is very evident from the record in this case that the division was in nowise equitable or just.  The property was owned by James M. Tanner in his lifetime.  In the absence of a will and the agreement claimed here the property would on his death have descended to his children, James C. and Ruby, subject to the dower and homestead interest, only, of their mother.  By his will he provided for an equal division of the property.

It is well settled in this State and elsewhere that where a fiduciary relation exists, it is incumbent upon one who

receives the benefit of an agreement made under such relationship to show that the agreement was just and fair. When two persons stand in such relationship that confidence is necessarily reposed by one in the other, and the influence which naturally grows out of that confidence is abused while such confidence continues, or an advantage is obtained by reason of such influence over the confiding party, the person seeking such advantage will not be permitted to retain the same although the transaction could not have been impeached if no such confidential relation had existed. (*Kochorimbus* v. *Maggos,* 323 Ill. 510; *Seeberger* v. *Seeberger,* 325 id. 47.) This is true regardless of the existence of actual fraud, undue influence or coercion. Courts will indulge the presumption that all transactions between parties occupying confidential relations to each other, by which one obtains an undue advantage of the other, are fraudulent. (*Crossman* v. *Keister,* 223 Ill. 69; 2 Pomeroy's Eq. Jur.—2d ed.—sec. 951.) It seems clear, therefore, that one of the elements essential to the right to enforce a parol contract for partition, to-wit, that the agreement shall be fair and just, is absent. The chancellor was justified in refusing to enforce the agreement and properly denied the prayer of the original bill.

Appellants also assign error on the decree granting the prayer of the cross-bill for partition, and it is argued that Faun Tanner having but a dower interest in the estate of James C. Tanner is not entitled to partition. It is essential to the right of a complainant to a partition that he show that he is the owner of an undivided interest in the premises sought to be partitioned, jointly, as a tenant in common, or in co-parcenary, with the parties against whom he seeks partition. (*McConnell* v. *Pierce,* 210 Ill. 627; *McConnel* v. *Kibbe,* 43 id. 12; *Ruddell* v. *Wren,* 208 id. 508.) Faun Tanner having only a dower interest in the land had no estate therein until assignment of dower, for the law casts the freehold upon the heir immediately upon

the death of the ancestor. This being so, it follows that she did not hold the lands in question in joint tenancy, tenancy in common or co-parcenary, and hence she could not, either by the common law or the statute, subject them to partition. *Loyd* v. *Malone,* 23 Ill. 43; *Reynolds* v. *Mc-Curry,* 100 id. 356.

It is contended by appellees that Margaret Jane Tanner adopted the answer and cross-bill of her mother, Faun Tanner, and therefore appears as cross-complainant in the cross-bill seeking partition according to the terms of the will of James M. Tanner, and that she has an undoubted right to such partition. While the chancellor in the decree found that Margaret Jane Tanner adopted the answer and cross-bill of her mother, Faun Tanner, (and there are indications in the record that the cause was treated by the parties as if that had been done,) it is not shown anywhere, either in the abstract or the record, that she did so adopt it. Decrees in chancery must be based upon the record in the case and not upon assumptions of counsel differing therefrom, and if the decree contains recitals which are not supported by the record such recitals must be disregarded.

Another reason why the decree cannot be affirmed is the absence of a finding that it is for the best interests of the infant cross-complainant that partition be ordered. *Miller* v. *Lanning,* 211 Ill. 620.

For the reasons stated the decree is reversed and the cause is remanded to the circuit court with leave to the guardian *ad litem* of Margaret Jane Tanner to file a cross-bill or adopt the cross-bill of Faun Tanner, should he so elect, and for further proceedings consistent with this opinion.                    *Reversed and remanded.*