(No. 18859.—

VICTOR GABRENAS *et al.* Appellants, *vs.* JOHN ROMANECKI,
Appellee.

*Opinion filed June 23, 1928.*

EDWARD J. KELLEY, and WALTER A. ROONEY, for appellants.

RICHARD J. COONEY, JOHN A. VERHOEVEN, and WALTER A. WITOWSKI, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellants, Victor Gabrenas and Margaret Gabrenas, his wife, filed their bill in the circuit court of Cook county against appellee, John Romanecki, for the specific performance of two contracts to convey real estate. The bill alleges that on the 17th day of July, 1925, appellee entered into an agreement with appellants to convey to them ten acres of land in Posen Acres, particularly described, and appellants were to sell to appellee certain property described, known as 3601 Lowe avenue; that the consideration to be paid by appellants for appellee's property was $6000 and that to be paid by appellee for appellants' property was $7500; that appellee agreed to convey by warranty deed his ten acres

subject to a mortgage of $600; that appellants were to give appellee a second mortgage for $700 and were to convey their property and take back a purchase money mortgage for $2800, payable in three years; that shortly after the execution of the contracts the parties agreed between themselves that each take immediate possession of the other's property, and that they did so by each turning over the keys to their property to the other and each entered into possession of the property he would receive by the contracts; that appellants have always been ready and willing to comply with the contract on their part; that on several occasions they requested a meeting with appellee and his attorney to close the deal, but that appellee refused, and still refuses, to perform the contract on his part.

Appellee answered the bill, among other things alleging he was not advised as to what mortgages were on appellants' property; denies they have always been ready and willing to comply with the terms of their contract; denies they ever requested the closing of the deal; denies he refused to comply with his contract, and alleges appellants were never ready or willing or able to close the deal as agreed; that he waited for a long time for them to do so and repeatedly sought to have it closed before abandoning the deal. Appellee also filed a cross-bill, alleging appellants agreed to convey to him their property on Lowe avenue free and clear of liens and encumbrances and to take back a first mortgage for $2800; that the property he agreed to convey to them was encumbered with a mortgage for $600, which they were to assume, and were also to give a second mortgage to him for $700. The cross-bill alleges cross-complainant immediately began the preparation to close the deal but that appellants claimed they were unable to find anyone to take a new mortgage on their property, and never did, in fact, do anything with reference to closing the deal. The cross-bill charges appellants with a breach of their contract and prays that the contracts be set aside.

After answers and replications were filed the cause was referred to a master in chancery to take the testimony and report his conclusions of law and fact. The master reported that the evidence showed that after the date of the contracts, July 17, 1925, until October following, appellee frequently urged appellants to close the deal; that appellants claimed they had been unable to get anyone to take a mortgage on their Lowe avenue property for $2800, and that on October 12, 1925, appellee told them that he was through and returned the keys to the Lowe avenue property. The master further reported the evidence showed that on September 23, 1925, appellants executed a trust deed to secure $2800, but that no loan was actually made or thing of value given to them in consideration for the trust deed and notes; that they never communicated to appellee their securing of the alleged loan for $2800, and that the execution of the trust deed did not tend to prove a compliance with the terms of their contract or a waiver of the contract from appellee. The master found the contracts for exchange of properties were vague, uncertain and indefinite, and that the intention of the parties could not be ascertained from an examination, alone, of the written contracts. He recommended the dismissal of the original bill for want of equity and that a decree be entered in accordance with the prayer of the cross-bill. Objections filed by appellants to the master's report were overruled and stood as exceptions before the chancellor. The chancellor overruled the exceptions and entered a decree in accordance with the recommendation of the master. From that decree appellants have perfected an appeal to this court.

We gather from the contracts, the pleadings and the evidence that the parties agreed to exchange properties and made two written contracts. The contract marked "Exhibit A" is that appellants agree to purchase for $6000 appellee's ten acres of land in Posen Acres, and appellee agrees to convey to appellants a good and merchantable title by

general warranty deed. The contract recites the conveyance is to be made in trade for appellants' building at 3601 Lowe avenue for a consideration of $7500. The contract further provides, in ambiguous terms as we interpret it, that appellee has paid a deposit of $2000 as earnest money, to be applied on the purchase when consummated, and agrees to pay the balance within five days after the title has been examined and found good or accepted. Appellants are to assume a mortgage of $600 on appellee's property and he is to take back a second mortgage for $700. A certificate of title, merchantable abstract or merchantable title guaranty policy made by the Chicago Title and Trust Company is required to be furnished by the vendor within a reasonable time, and the purchaser or his attorney shall, within ten days after receiving the evidence of title, deliver to the vendor a note or memorandum in writing specifying in detail the objections he makes, if any, to the title, and if none, stating that the same is satisfactory. If defects are found in the title which cannot be cured within sixty days after the notice, at the purchaser's option the contract shall become null and void and the earnest money returned, but the purchaser may nevertheless elect to take the title as it then is, provided he shall first give written notice of such election within ten days after the expiration of the sixty days. If the purchaser fails to perform his contract promptly in the manner agreed it shall become null and void. The contract provided that it and the earnest money should be held by John P. Ewald. By the other contract, marked "Exhibit B," appellee agrees to purchase appellants' property on Lowe avenue for $7500 and they agree to convey the same to appellee by general warranty deed. It recites the purchaser has paid a deposit of $2000, notes, to be applied on the purchase when consummated, and appellee agrees, within five days after the title has been found good or accepted, on the delivery of a general warranty deed at the office of John P. Ewald, to pay the balance.

Appellants are to take back a first mortgage of $2800 after first clearing the property of the present mortgage of record. "Exhibit B" contains substantially the same provisions as "Exhibit A" about furnishing evidences of title, notice of defects, if any, etc. Both contracts provide they shall be held by John P. Ewald for the mutual benefit of the parties until their consummation, and that the earnest money paid may be retained by Ewald to apply on the payment of expenses incurred, the vendor's broker's commission of $200 as stated in "Exhibit A," and as stated in "Exhibit B" of "RER per cent on the selling price."

It appears from the pleadings, evidence and master's report that appellants were conducting some kind of a store in their building on Lowe avenue and that they made a bill of sale to appellee for the merchandise. One of the appellants testified the stock in the store was worth $1500. By mutual agreement, not expressed in the contracts, appellee took possession of the Lowe avenue property and appellants moved into and took possession of the Posen ten acres. Appellee testified he sold the stock in the store for $40 and that he gave appellants $20. The master correctly found and reported that the bill of sale for the merchandise had nothing to do with the determination of the issues involved in the case.

Appellants do not claim they ever tendered performance of their contract, but that formal tender was excused or waived by appellee declaring his intention not to perform his contract before the time appellants were required to perform. An attorney for appellants delivered to an attorney for appellee an abstract of title to appellants' property on August 27, 1925. No notice of objection or approval was afterwards given to appellants, as required by the contracts. Appellants were living in and occupying the Posen Acres property in September, October and November. Appellee visited them there in September and in October, 1925, and appellants claim on each occasion of such

visits they insisted on the performance of the contracts, and that appellee said he would not perform because they had not placed a mortgage on their Lowe avenue property, as they agreed. Through the assistance of a lawyer named Perlman, appellants in September, 1925, executed a mortgage or trust deed on their property for $2800. It purported to secure a loan, and was dated September 21, 1925, and acknowledged by appellants on that date. They had delivered the abstract of their title to appellee's attorney on August 27, 1925. September 24, 1925, appellants' attorney wrote appellee that appellants had placed the matter of performing the contract in his hands, and that unless he heard from appellee before October 1 he would begin suit for specific performance. The letter stated appellants were ready, able and willing to perform on their part. Appellants, or one of them, testified to making an appointment with appellee to meet him on a certain day at an attorney's office to close the deal; that they went to the office at the time mentioned but appellee did not appear, and afterwards, when seen by one of the appellants, he said he was going back to his farm, where appellants were living, and that he would not go through with the deal.

To us it seems from the evidence that the written contracts did not embrace all of the agreements of the parties. We infer from the pleadings and evidence that appellants' property was subject to two mortgages, of $1000 and $1800, respectively, and that they agreed to have them released and execute another mortgage on the property for the same amount, but this does not clearly appear from the written agreements. If that was the understanding of the parties it was not complied with before September 23, when appellants executed a mortgage or trust deed for $2800 on their property, but the master reports that the evidence does not show that there was any consideration paid for the trust deed, and we do not find that the evidence shows this was untrue. It simply shows the execution of the trust deed on

September 23, but there is no proof that appellee was ever notified of its execution. On some of his visits to appellants, appellee was told by them that they had not been able to get a mortgage on the Lowe avenue property, and he objected to closing the deal until they had done that. Appellee testified, on one occasion of his visits to them about the matter, in September, they said they could not get a mortgage on their property and offered to pay him a commission if he could get it. On most of the important parts of the testimony of appellants and appellee there were flat contradictions.

We have reached the conclusion that owing to the uncertainty and ambiguity of the contracts and the evidence of the respective parties a decree for specific performance would not be justified.

Counsel for appellants say in their brief they did not draw the contracts; that they do not believe they were drawn by a Blackstone, a Kent or a Story, but do believe they are enforcible. This court has repeatedly held that to enforce the specific performance of a contract to convey real estate it must be unambiguous, complete in its terms and clearly proven, and that it must express the terms agreed upon. In *Westphal* v. *Buenger,* 324 Ill. 77, (a specific performance case,) the court, commenting upon the construction contended for, says: "The language of the contract does not justify such a construction. While such may have been the intention of the parties it does not appear from the contract. A written contract is one which is all in writing, so that its terms and provisions can be ascertained from the instrument itself. [Citing authority.] To entitle a party to specific performance the contract must be clear and certain in its terms and be admitted or proved with a reasonable degree of certainty. [Citing authorities.] An agreement in writing which does not purport to give an absolute right without further negotiations thereon cannot be specifically enforced."

The parties to this action are not native Americans, or at least they spoke English very imperfectly and did not seem able to express themselves very clearly. We have spent considerable time on the case, but have been unable to construe the contracts as expressing all the intentions of the parties when considered in connection with their testimony, and conclude that the court did not err in rendering its decree.

The decree is affirmed.

*Decree affirmed.*