Milic Pesovic, Plaintiff-Appellee, *v.* Svetozar Pesovic, Defendant-Appellant.

(No. 56478;

First District (2nd Division)—March 13, 1973.

*Rehearing denied April 4, 1973.*

Svetozar Pesovic, *pro se.*

Edward T. Havey, of Chicago, for appellee.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

This was an ejectment suit by a father, the appellee Milic Pesovic, against his son, appellant Svetozar Pesovic, in which Milic sought to evict Svetozar, his wife and their three minor children from a house in Chicago. In an answer that evinced a bitter family dispute, Svetozar interposed the defense that Milic had either made a contract to convey the house to him or had given him the house as an oral gift of land. After hearing Milic's testimony, that of Branka, Svetozar's wife, and receiving exhibits of the parties, the trial court ruled that Milic was owner of the house; that he had not contradicted to convey it to Svetozar nor gave it to him as an oral gift and that Milic had the right to evict Svetozar and his family. The issue in this appeal is whether the evidence in this record proved that the house had been the subject of either a contract to convey or an oral gift by Milic Pesovic to his son Svetozar.

I.

Milic Pesovic came to this country from Yugoslavia in 1950. He left a family that included Svetozar. Milic became an American citizen on June 21, 1956. In July 1957, having paid $7500, he received a warranty deed to a six-room house situated in Chicago at 10041 South Exchange Avenue.

In 1957, because of his political views, Svetozar was incarcerated in a Yugoslav prison. He escaped and became a political refugee in Greece. With the aid of the United States and Greek governments he was joined by his wife and children. Until the middle of 1959, Svetozar lived in the

Greek city of Florina employed by the Greek army as a driver in a motor pool. Life there was good and living standards were "quite comfortable."

Sometime during the last half of 1958, Milic Pesovic began corresponding with Svetozar urging him to come to this country with his family. In a letter written in Serbian, Milic told Svetozar that "[w]hen you come to me I will dress up and shoe you and your family. I promise you that I will buy everything you and your family need. When you arrive here to me I will need a lot of money to shelter you and your family." In the closing sentence, Milic asked Svetozar to tell his wife and children that "* * * they will have their own home." Earlier, to assist Svetozar in his application to immigration authorities, Milic executed an affidavit in which he said that he lived in Hammond, Indiana; that he was regularly employed by the Youngstown Sheet and Tube Company as a mechanic's helper earning more than $400 per month; that he desired to sponsor Svetozar's immigration from Florina, Greece to this country; that if an immigration visa were granted him, he, Milic, undertook to see that Svetozar would not become a public charge in this country; that he would furnish Svetozar with food, clothing and other necessities of life; that he would obtain employment for Svetozar in local industry; that he had adequate housing and accommodations for Svetozar when he arrived in this country; and that he would help Svetozar become established in the American way of life. In other letters written by him to Svetozar, Milic urged his son to leave Florina, Greece and come to the United States with his family.

Prompted by these urgings, Svetozar, sometime in the latter half of 1959, brought his family to this country. First, they lived with Milic in Hammond, Indiana. Then, a short time later, Milic gave them possession of the house in Chicago. They lived there for about one year when Milic began demanding rent from Svetozar. He refused to pay and moved his family out of the house. In December 1961, Svetozar suffered a serious industrial accident. He demanded of Milic the support and assistance which Milic had promised in his letters and in the affidavit prepared for immigration authorities. Milic refused. In March 1964, Svetozar became an American citizen. On November 25, 1964, he filed a chancery suit against Milic in which he alleged the inducements Milic had made in persuading him to emigrate from Greece to this country with his family. Svetozar prayed that the court order Milic to convey to him the house in Chicago and pay him damages in the sum of $10,000. The case was referred to a master in chancery who heard evidence and recommended that a decree be entered in favor of Milic. While the case was pending on objections to the master's report, Svetozar decided that

he could receive amnesty if he and his family returned to Yugoslavia. He began preparations to do so. In the meantime, because of his accident, Svetozar and his family encountered hard times. Milic claims that he took pity on the plight of his grandchildren. Svetozar claims that Milic did not want his grandchildren returned to Yugoslavia, a communist country. In any event, Milic allowed Svetozar and his family to return to the house in Chicago.

Svetozar did not pay rent and title to the house remained in Milic who paid all the real estate taxes and insurance bills. Between May 1966 and February 1970, Svetozar spent slightly more than $800 for repairs and improvements of the house. In September 1966 and May 1967, Milic made unsecured loans of $4000 and $500 to Svetozar, funds which Milic said were used by Svetozar toward the purchase of a house on Milwaukee Avenue in Chicago. On February 11, 1970, Milic filed a forcible entry and detainer suit in which he alleged that Svetozar was unlawfully withholding possession of the house. This suit, however, was dismissed for want of prosecution with a non-suit judgment in favor of Svetozar. Then on March 19, 1970, Milic filed the ejectment complaint in this case. He alleged ownership of the house, Svetozar's unlawful withholding of its possession and he prayed for a judgment of eviction. Svetozar answered the complaint and affirmatively alleged Milic's inducements by letter and affidavit, his possession of the house in 1959 and in 1966 and the expenditures for repairs and improvements. Svetozar argued that either Milic had made a contract to convey the house to him or he had made an oral gift of the house. Among other relief, he prayed for specific enforcement of the contract. This was denied and judgment entered in favor of Milic.

## II.

■■ Specific performance of a contract to convey land requires one that is unambiguous, complete in its terms and clearly proven. (*Gabrenas v. Romanecki*, 331 Ill. 95, 101, 162 N.E. 161.) The contract cannot be partly written and partly oral. (*Kopprasch v. Satter*, 331 Ill. 126, 127, 162 N.E. 141; *Weber v. Adler*, 311 Ill. 547, 143 N.E. 95.) And it is not enough to show that some kind of contract existed between the parties; it must appear that the contract was certain in all its terms so that a court can specifically enforce it. *Peiffer v. Newcomer*, 326 Ill. 189, 195, 157 N.E. 240.

■■ To be specifically enforceable, a land contract must point out the land to be conveyed or furnish the means of identifying the land with certainty. (*Crocker v. Smith*, 366 Ill. 535, 537, 9 N.E.2d 309.) It must not be indefinite. Therefore, where an uncle, concerning his farm, wrote his

nephew that if he would come and "make a success at farming it, unless some unknown cause should turn up, after my death to be your farm," our Supreme Court held that even though the nephew accepted the offer, moved to the farm, occupied and farmed it until the uncle's death, the contract could not be specifically enforced because it was not absolute in its terms and was too indefinite. *Dunshee v. Dunshee*, 255 Ill. 296, 99 N.E. 593.

■■ Although *Dunshee* presents factual differences, we are constrained to the same conclusion in this case. Neither Milic's letters to Svetozar nor the immigration affidavit he furnished contained terms that were definite, certain and complete. In fact, they did not disclose a contract for the conveyance of land which a court of equity could enforce by specific performance. Certainly, they did not mention the house in Chicago, although Milic was then its owner. Carefully read, those letters and the affidavit did nothing more than express the heartfelt desires of a father that his son come to this country and improve his lot in life. Therefore, the evidence in this record did not prove a specifically enforceable contract to convey land. *Crocker v. Smith*, 366 Ill. 535, 9 N.E.2d 309; *Hanlon v. Hayes*, 404 Ill. 362, 89 N.E.2d 51.

■■■ Nor did the evidence prove that Milic gave Svetozar the house in Chicago as an oral gift of land. One who claims to be a donee has the burden of proving all the facts essential to a valid gift. (*In re Estate of Jarmuth*, 329 Ill.App. 619, 630, 70 N.E.2d 336.) To prove a valid gift, the evidence must show delivery to the donee with intent of the donor to pass title absolutely and irrevocably and relinquish all present and future dominion over the gift. (*In re Estate of Waggoner*, 5 Ill.App.2d 130, 137, 125 N.E.2d 154.) A gift that is capable of legal conveyance but is not made the subject of a conveyance is revocable. *McCartney v. Ridgway*, 160 Ill. 129, 156, 43 N.E. 826.

■■ An oral gift of land does not pass title to the donee. (See *Pocius v. Fleck*, 13 Ill.2d 420, 428, 150 N.E.2d 106.) This is true even where the gift is accompanied by possession, unless the possession is continuously adverse to the donor for the statutory period, or after taking possession the donee with his own means makes permanent and valuable improvements, or there are such facts as would make it a fraud on the donee not to enforce the gift. (*Stephens v. Collison*, 313 Ill. 365, 375, 145 N.E. 81; *Wolf v. Harper* (1950), 313 Ky. 688, 233 S.W.2d 409; *Dawson v. Tumlinson* (1951), 150 Tex. 451, 242 S.W.2d 191; 38 C.J.S. Gifts § 57.) In other words, there must be some equitable circumstance that will require enforcement of the alleged gift. *Hill v. Bowen*, 8 Ill.2d 527, 538, 134 N.E.2d 769.

■■■ The only evidence in this record which bears on Svetozar's claim that Milic gave him the house in Chicago as an oral gift is the testimony of Branka, his wife. She testified that in May 1966, Milic came to their home and gave them the house so that she, Svetozar and the children would not go back to Yugoslavia, a communist country. Milic, however, denied the substance of Branka's testimony. He explained that in May 1966 he visited Svetozar's children and found them sick and without food. He felt sorry for them and, because of this, he allowed Svetozar to move back into the house in Chicago. The house cost Milic $7500. In the affidavit he furnished for Svetozar's immigration proceedings, Milic gave the house a value of $10,000. The improvements that Svetozar made on the property totalled a little more than $800. But there is evidence in this record which shows that after May 1966 Svetozar received from Milic, as unsecured loans, $4,000 or $4,500. Moreover, Milic retained title to the house, paid the insurance premiums and the real estate taxes. A strong presumption exists that the party who pays taxes on the land is its owner. (*Geer v. Goudy,* 174 Ill. 514, 531, 51 N.E. 623.) Therefore, in our judgment, the evidence in this record did not prove that the house in question had been the subject of an oral gift of land by Milic Pesovic to his son Svetozar.

■■ Svetozar Pesovic was born in Yugoslavia. During World War II, at the age of 12, he was injured by a land mine that cost him his right eye and his left hand. His formal education took him to the third grade of a Yugoslavian elementary school. Yet, when this case was heard in the trial court, and because of circumstances not entirely his doing, Svetozar had to represent himself. With credible aptitude, he conducted cross-examination and presented evidence to support his contention that he had been the victim of an injustice at the hands of his father, Milic. When judgment was entered against him, he filed a post-trial motion and later a notice of appeal that hear the imprint of a layman. In his appeal, first before the Supreme Court and now before us, Svetozar has represented himself. Understandably, his brief and abstract do not conform with the requirements of rules that govern their form and content. Because of these shortcomings, we have examined the record on appeal in order to see if, perchance, it supports Svetozar's claims of injustice. We find that it does not. The judgment is affirmed.

Affirmed.

STAMOS, P. J., and SCHWARTZ, J., concur.