JEAN WOOD, d/b/a Wood Aviation, Plaintiff-Appellant, *v.*
MOODY-McMASTER, INC., Defendant-Appellee.

Fourth District    No. 17614

Opinion filed June 17, 1982.

Dale A. Cini, of Ryan, Grabb, Cini & Bennett, of Mattoon, for appellant.

M. John Hefner, of Harlan Heller, Ltd., of Mattoon, for appellee.

JUSTICE WEBBER delivered the opinion of the court:

Plaintiff, a resident of Moultrie County, filed a suit for breach of contract against defendant, a corporation having its principal place of business in Florida and not registered as a foreign corporation in Illinois. Defendant filed a special and limited appearance in the circuit court of Moultrie County where the suit was brought to contest the jurisdiction of the court pursuant to section 20 of the Civil Practice Act. (Ill. Rev. Stat. 1979, ch. 110, par. 20.) Defendant had been served with process in Florida pursuant to section 16 of the Act. The trial court sustained the objection to

its jurisdiction and dismissed the suit. This appeal followed from that order. We affirm.

The facts must be established from the pleadings and from the affidavit of the defendant's president attached to its special and limited appearance and the counteraffidavit of the plaintiff filed on the day of hearing, together with the exhibits attached to the complaint and to the affidavits. Plaintiff moved for an evidentiary hearing but this motion was denied by the trial court which decided the matter on the aforementioned documents pursuant to section 20(2) of the Civil Practice Act. Ill. Rev. Stat. 1979, ch. 110, par. 20(2).

The factual matters must be viewed against the backdrop of the divergent theories of the parties as to the nature of the transaction and thus whether or not defendant submitted to the jurisdiction of the Illinois court under section 17 of the Civil Practice Act. (Ill. Rev. Stat. 1979, ch. 110, par. 17.) The dispute centers around the sale of a Cessna 401 airplane. Plaintiff claims that he was the owner of the plane and in possession of it in Moultrie County; that the negotiations for the sale were conducted by telephone and mailgram from Moultrie County; and that defendant's employee came to Moultrie County and took possession of the aircraft there; hence jurisdiction lay in the Moultrie County circuit court.

Defendant, *contra*, claims that all negotiations were with a broker, an Indiana corporation, at Asheville, North Carolina; that the broker delivered the plane to Florida; that plaintiff came to Florida and removed the plane back to Illinois; that the broker promised to defray all costs in returning the aircraft to Florida; and that to this end, defendant dispatched its corporate pilot to Moultrie County where he obtained the craft and returned it to Florida; therefore, no negotiations, delivery, nor payment were made in Illinois; hence no jurisdiction lies in Illinois.

By piecing together information from the papers on file in the case, it becomes apparent that certain facts are uncontroverted. Plaintiff owned the aircraft on December 5, 1980, and on that date a purchase order for it was signed by defendant's president and a representative of the broker. Both parties attached copies of the purchase order to their pleadings; plaintiff alleged ownership in his complaint; and in a mailgram attached to the complaint and sent by plaintiff to defendant on December 31, 1980, plaintiff stated that he "confirm[ed]" his approval of the sales contract from Rhoades (the broker) dated December 5, 1980.

Defendant's affidavit states that the broker delivered the plane to Boca Raton, Florida, on December 5, 1980, where it was inspected by defendant's president, who found certain defects which were to be corrected prior to final acceptance; that on December 20, 1980, defendant became aware that the plane had been removed from its possession; that on December 27, 1980, the police department of Boca Raton informed

defendant that the aircraft had been removed by its registered owner, plaintiff, to the State of Illinois; that the broker promised to return the aircraft to Florida at its own expense; and that pursuant to that promise the plane was returned from Illinois to Florida. These statements are not controverted by any of plaintiff's pleadings, nor his affidavit.

In their affidavits the parties part company over the matter of negotiations. Plaintiff states that he had possession of the aircraft from December 21, 1980, to January 2, 1981, in Illinois; and that he negotiated with defendant by telephone from his home in Sullivan and culminated the negotiations by the mailgram whose contents have been summarized above. In its affidavit defendant denies such negotiations.

■■■ It is thus apparent that the only controverted fact is that of negotiations. However, this was not properly presented to the trial court and hence could take no part in its decision, the presumption being that when a matter is being heard at bench only competent evidence is considered. (*Tanner v. Tanner* (1927), 326 Ill. 302, 157 N.E. 161.) Both affidavits refer only to "negotiations," a purely conclusory term, and thus in violation of Supreme Court Rule 191(a) (73 Ill. 2d R. 191(a)), which states in part that affidavits in connection with a special appearance under section 20(2) of the Civil Practice Act "shall not consist of conclusions but of facts admissible in evidence." Compare *Stephens v. Northern Indiana Public Service Co.* (1980), 87 Ill. App. 3d 961, 409 N.E.2d 423.

Negotiations then being absent so far as the record is concerned, there is nothing left except a contract made between foreign corporations concerning subject matter located in the State of Florida. It is the same contract ultimately "confirm[ed]" by the plaintiff by means of his mailgram; the subject matter was not in this State until it was unilaterally extracted from Florida by the plaintiff; and the defendant's agent was present in this State only because of the provocation by the plaintiff.

Even if the negotiations were to be considered a "fact" within the meaning of Supreme Court Rule 191(a), they occurred because of plaintiff's action in removing the aircraft to Illinois. The case is thus unlike *Tabor & Co. v. McNall* (1975), 30 Ill. App. 3d 593, 333 N.E.2d 562, which is heavily relied upon by plaintiff. In *Tabor* the defendant purposefully entered this State, seven times in all, in the execution of the contract which called for performance in this State. It was foreseeable that McNall would be present in Illinois. The Supreme Court, in rejecting a mechanical application of a foreseeability rule, nevertheless said:

> "This is not to say, of course, that foreseeability is wholly irrelevant. But the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably

anticipate being haled into court there." *World-Wide Volkswagen v. Woodson* (1980), 444 U.S. 286, 297, 62 L. Ed. 2d 490, 501, 100 S. Ct. 559, 567.

It is thus apparent from this record that any activity by defendant in this State, *i.e.*, either "negotiations" or the presence of the corporate pilot, was provoked by the unilateral act of plaintiff and was not a voluntary submission to its jurisdiction. McNall could reasonably anticipate being haled into court here and in fact entered a Wisconsin court for the purpose of limiting his damages. The defendant in the instant case was forced into this jurisdiction. In this connection, the language in *Woodfield Ford, Inc. v. Akins Ford Corp.* (1979), 77 Ill. App. 3d 343, 351, 395 N.E.2d 1131, 1137, is instructive:

> "Any contract involving an Illinois party inevitably has a contact with this State, but to equate some contact with sufficient contact is to abandon the required qualitative analysis of contacts for a simple counting exercise. We find no contacts in the instant case which indicate that defendant voluntarily 'availed itself of the privilege' of conducting business here. On the contrary, the record shows that plaintiff sought out defendant, who then performed entirely from outside of the State. To uphold jurisdiction in this instance would be tantamount to allowing plaintiff to 'lure' defendant into the State. Finding jurisdiction over defendant here on the basis of plaintiff's actions is not consistent with the 'traditional notions of fair play and substantial justice' mandated by *International Shoe*."

■■ We conclude that in this case the defendant had performed no act submitting to the jurisdiction of the courts of this State within the meaning of section 17 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 17) and that any minimum contacts which it might have had (*International Shoe Co. v. Washington* (1945), 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154) were involuntary. The action of the circuit court of Moultrie County in sustaining the objection to jurisdiction was correct and it is affirmed.

Affirmed.

LONDRIGAN and TRAPP, JJ., concur.