ALICE SCHOONMAKER *et al.*

· *v.*

EUGENE PLUMMER *et al.*

*Filed at Ottawa January ¹8, 1892.*

1. STATUTE OF FRAUDS—*how to be availed of.* An answer to a bill for specific performance in respect of a gift of a house and lot, which alleges the gift is a parol gift, that it is obnoxious to the Statute of Frauds, and that such gift is of no avail,—that is, is void as against the defendants,—is sufficient to invoke the defense of the Statute of Frauds.

2. CHANCERY—*sufficiency of evidence—presumption in favor of finding of trial court.* Where the testimony of the witnesses in a chancery suit is taken orally, and there is great conflict, the trial court will be presumed to be a better judge of the credibility of the witnesses than this court. In such case the presumption in favor of the finding of the decree must prevail, unless it appears that the trial court was clearly and manifestly in error.

APPEAL from the Circuit Court of Knox county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Mr. F. F. COOKE, and Mr. G. W. THOMPSON, for the appellants:

To set up the defense of the Statute of Frauds, "the language of the answer setting up the statute must be clear and explicit to that end, and must expressly claim the benefit of the Statute of Frauds." It is not sufficient to insist that the contract is void and not enforceable. Browne on Statute of Frauds, sec. 519; *Trustees* v. *Wright,* 12 Ill. 441; *Switzer* v. *Skiles,* 3 Gilm. 529; *Warren* v. *Dickson,* 27 Ill. 115; *Vanpell* v. *Woodward,* 2 Sandf. Ch. 143; *Rhodes* v. *Rhodes,* 3 Ind. 283.

As to the form of properly pleading the Statute of Frauds in answer, see 3 Daniell's Ch. Pr. 2144.

When the bill sets up such facts as in equity will take the case out of the bar of the statute, such facts must be denied by the answer, in addition to the statute being specially insisted upon as a defense. Story's Eq. Pl. sec. 764; Cooper's Eq. Pl. 256; 1 Daniell's Ch. Pr. 681; Browne on Statute of Frauds, sec. 518, and citations.

A parol promise by a father to a child to give a property to the child if she will take possession and improve the same, when followed by possession and the expenditure of labor and money in improvements, is regarded as resting upon a valuable consideration, and will be enforced in equity, even when the Statute of Frauds is insisted upon as a defense. *Smith* v. *Yocum,* 110 Ill. 144; *Bright* v. *Bright,* 41 id. 97; *Kurtz* v. *Hibner,* 55 id. 514; *McDowell* v. *Lucas,* 97 id. 489; *Bohanan* v. *Bohanan,* 96 id. 591; *Warren* v. *Warren,* 105 id. 568; *Irwin* v. *Dyke,* 114 id. 305.

The word "give" is construed as "convey" when applied to land. Bishop on Contracts, sec. 404.

There is no important difference between a promise to give, followed by possession with improvements, and a sale. *Kurtz* v. *Hibner,* 55 Ill. 514.

Mr. J. A. McKenzie, and Mr. J. J. Tunnicliff, for the appellees:

The Statute of Frauds was sufficiently pleaded. If it appears on the face of the bill that the contract is oral, the defense may be made by demurrer. *Cloud* v. *Greasley,* 125 Ill. 316; *Trustees* v. *Wright,* 12 id. 441.

To entitle a party to a specific performance the proof must be clear and fair, and must correspond with the allegations in the pleadings. *Hartwell* v. *Black,* 48 Ill. 301.

Where a contract for the conveyance of land rests in parol it must clearly appear that the contract has been made, its terms must be clearly proved, and it must clearly appear to have been relied on and performed by the party asking the enforcement of the contract, before there can be a decree for specific performance. *Gosse* v. *Jones,* 73 Ill. 508.

The court must be well satisfied of the existence and character of the agreement. *Selton* v. *Shipp,* 65 Mo. 297.

When a specific performance is sought under a contract, or gift or promise, to convey real estate, if such contract is vague or uncertain in its terms, or is not clearly proven, a court of equity will not decree a specific performance. *Allen* v. *Webb,* 64 Ill. 342; *Bowman* v. *Cunningham,* 78 id. 48; *Lokerson* v. *Stillwell,* 13 N. Y. Eq. 357; *Minturn* v. *Baylis,* 33 Cal. 129; *Stanton* v. *Miller,* 58 N. Y. 200; *Bailey* v. *Edmunds,* 64 Ill. 125; *Sands* v. *Sands,* 112 id. 225; *Sage* v. *McCornack,* 87 id. 487; *Stock Yards* v. *Ferry Co.* 112 id. 396.

Mr. Justice Bailey delivered the opinion of the Court:

This was a bill in chancery, brought by Alice Schoonmaker and Edward Schoonmaker against Eugene Plummer and Nancy Plummer, to restrain certain proceedings at law, and to compel the conveyance by the defendants to said Alice Schoonmaker of a certain dwelling-house and lot in the city of Galesburg, described as lot 1, in block 1, in Peck & Wood's addition to Galesburg. The complainants are husband and

wife, and said Alice Schoonmaker is a daughter of the defendants.

The claim of the complainants, as made by their bill, and as they have attempted to establish it by the evidence, is, in substance, that in March, 1885, and for two years prior thereto, they were residing in Monmouth, Warren county, said Edward Schoonmaker having steady employment at good wages with the Weir Plow Company of Monmouth. The defendants, at the same time, were residents of Knoxville, Knox county, about twenty-one miles from Monmouth and about five miles from Galesburg, and were well off. It being the desire of the defendants that their daughter should live nearer them where they could more easily visit her, they proposed to the complainants that they leave Monmouth and move to Galesburg, and as an inducement to their doing so, said Eugene Plummer offered to buy a house and lot in Galesburg and give it to his said daughter, in case the complainants would move to Galesburg and live in the house to be so purchased. Plummer and his daughter thereupon made several trips to Galesburg to examine different houses which Plummer was proposing to buy, to see if they would suit her, and if she would be willing to have her husband give up his regular employment at Monmouth and move to Galesburg in consideration of the proposed gift.

On the 20th day of March, 1885, Alice Schoonmaker, in response to a message from her father by telephone, came to Knoxville where she met her father, and was by him driven to Galesburg, to examine the house and lot in controversy in this suit, and for which her father had then made some negotiations. After she had examined the house, her father asked her if it suited her, and upon her replying that it did, he said : "That is all-sufficient, it is for you I am buying it." The same day Plummer bought said house and lot, paying $1800 for it, but taking a conveyance of it to himself. After the purchase, Plummer urged the complainants to move into said house at

once, but in consequence of sickness, their removal from Monmouth was delayed until April 29, 1885, when they moved to Galesburg and took possession of said house.

The house at that time was new and not entirely finished, and the rear part of the lot was low and needed filling. After they took possession, Plummer urged them to fix the house up, saying that it was theirs and that they should fix it to suit themselves. The complainants thereupon, as they claim, finished the stairway which was incomplete, painted and papered the house on the inside, and afterward bored a well fifty feet deep, floored and battened the wood-shed, graded up the rear of the lot by putting on about two hundred loads of earth, built some fence, planted some shrubbery, and made some other improvements, treating the premises as though they were their own. The total value of said improvements, according to their evidence, was from $400 to $500.

The complainants remained in possession until July 14, 1890, when Plummer served on them a written notice to surrender said possession to him, and soon afterward he commenced against them an action of forcible detainer, before a justice of the peace, and upon trial of said suit, judgment therein was rendered in favor of the complainants. Plummer thereupon removed said suit by appeal to the Circuit Court, where it is still pending. Plummer also brought his suit in ejectment against the complainants to recover possession of said premises, and thereupon this suit was brought to restrain the prosecution of both of said suits at law, and to compel a conveyance of said premises to said Alice Schoonmaker.

The defendants, by their answer, deny that Plummer offered to buy a house and lot and give it to his daughter. They also allege that the complainants, while living at Monmouth, had not been able to accumulate anything, and that they had fully determined to leave Monmouth and move to Galesburg; that Plummer thereupon had his daughter look at the house in question, and upon her expressing satisfaction with it, he said

he would buy it and let her and her husband move into it; that Plummer did afterwards buy said house, taking the conveyance thereof to himself, and permitted his said daughter and her husband to occupy it, and that it was his intention, until they got a little ahead in the world, to let them occupy said premises free of rent; that the improvements put upon said premises by the complainants have in no year been equal to a reasonable rent thereof, and that neither of the complainants pretended, until shortly before the filing of said bill, that they owned said premises, but on the contrary, they attempted to buy said house and lot of Plummer at half its value.

The defendants also, by their answer, in the following language, "assert that there never was any gift of said premises to either of the complainants, and assert that, if either or both should testify to such gift, they will, by their statement, as they have in their bill, show only such parol gift as is governed by the Statute of Frauds and Perjuries, and of no avail against these defendants or either of them."

The cause being heard on pleadings and proofs, a decree was rendered dismissing the bill at the complainants' costs for want of equity, and the complainants now bring the record to this court by appeal.

The point is made that, by the language of the answer above quoted, the Statute of Frauds is not sufficiently pleaded or set up to enable the defendants to avail themselves of its provisions. It is true the allegation is not very formal, and does not conform to the recognized precedents, but we think it sufficient in substance, especially in view of the fact that the bill, on its face, alleges the gift as a parol gift. The allegation of the answer seems to show with sufficient certainty, that the gift alleged in the bill is a parol gift; that it is obnoxious to the provisions of the Statute of Frauds and Perjuries, and that said gift is of no avail, that is, is void, as against the defendants. This, we think, is a sufficient pleading of the statute.

The main contention arises upon the evidence, the contention on the part of the defendants being that there is no such clear and satisfactory proof of even a parol gift as can entitle the complainants to a decree of specific performance. The evidence is quite voluminous, and it would serve no useful purpose for us to attempt an analysis of it in its details. We shall therefore content ourselves with a brief statement of our reasons for concurring with the conclusion reached by the trial court.

The testimony of the parties to the alleged gift is directly in conflict, the one affirming and the other denying it. As their testimony, as well as that of the other witnesses, was delivered orally in open court, the court below had an opportunity to see them and hear them testify, and was accordingly in a much better position to judge of their relative credibility than we can be. A strong presumption is thus raised in favor of the findings of the decree, so far as they relate to questions upon which the evidence is conflicting, and that presumption must prevail, unless we are able to see that said court was clearly and manifestly in error.

The gift, if one was made, was a transaction between Plummer and his daughter alone, and they are the only ones who are able to testify to it directly. The daughter testifies that she and her husband, after their marriage, lived in Monmouth about two years before their removal to Galesburg; that they boarded in Monmouth six months before going to housekeeping, and that while they were boarding, her father came to Monmouth two or three times, and that while he was there, he and she went to see three or four different houses, but whether with a view of buying or renting does not distinctly appear; that on several occasions in the fall prior to her removal to Galesburg, her father said that if she and her husband would move to Galesburg, he would buy a house and give it to her. In another place she testifies: "He wanted me near home. He said if I would come up, he would get me a house." Also that after looking at various houses in Gales-

burg, none of which suited her, her husband received a message from her father by telephone asking her to come up, and that she came to Knoxville the next day, and went with her father to Galesburg and examined the house in question, and that her father, on being assured that she was satisfied with it, said: "That is all-sufficient. It is for you I am buying it." She further testifies that her father then bought the house and urged her and her husband to move into it at once, but that in consequence of sickness, they were prevented from so doing until over a month later; that after they moved in, her father urged them to fix the premises up, saying that they were hers, and that they put on the premises expensive improvements, substantially as already stated. Also, that for four years, she and her husband paid the taxes on said premises; that in 1889, her husband having reported to her that her father had come to him demanding rent, she asked him why he had done so, and he denied having made any such demand.

Plummer, on the other hand, testifies that he never made a gift of said house to his daughter, or promised so to do; that he bought said property simply to furnish his daughter a home; that a year or more before his daughter and her husband removed to Galesburg and while they were living in Monmouth, he made several attempts to rent a house for them in that place, and also entered into negotiations for the purchase of a house there for them to live in, but was unable to consummate the purchase; that his daughter became very desirous of removing to Galesburg, and accordingly, after getting her to look at various houses there which failed to suit her, entered into negotiations for the purchase of the house and lot in question, and upon taking her to see it and finding that it suited her, he purchased it and told his daughter and her husband that they might move into and occupy said house, all except one room which he reserved, and that they could fit it up to suit themselves; that they did move into said house and were still occupying it, and had made some improvements on

it, but that said improvements were much less than a fair equivalent for a reasonable rent for said premises; that he had paid all the taxes on said premises except for one year.

Assuming for the moment the soundness of the complainant's contention that a promise by one party to buy a house and lot and give it to another, must necessarily be construed as a promise to convey to the donee the fee, we think it clear that the testimony of these two witnesses, when considered alone, comes far short of furnishing that certain and satisfactory proof of a parol gift necessary to justify a decree of specific performance of the gift by compelling a conveyance of the legal title. While Mrs. Schoonmaker testifies to repeated promises on the part of her father to buy a house and lot and give it to her, she fixes no time or place where, and gives none of the circumstances of any occasion when, such promise was made. This of itself greatly weakens the force of her testimony on this point.

But the real gift, if there was one, was made at the time she, after viewing the house, expressed to her father her satisfaction with it. All that preceded it was the mere promise. This was intended to be and was accepted as the performance. The words used by her father constituting the gift were: "That is all-sufficient. It is for you I am buying it." These words, so far as we can see, are quite as consistent with her father's version of the transaction as with hers. She claims that he meant that he was buying it for the purpose of having it conveyed to her, and he claims that his intention was, to buy the property with a view of having her and her husband occupy and live in it, and thus have the use of it as their home. What we have here said is upon the theory of entire accuracy of Mrs. Schoonmaker's version of the transaction, but when her testimony is confronted with that of her father, which, so far as we can see is entitled to as much credit as hers, the strength of the case she makes is still further weakened. He denies that any gift was intended or that he made any promise

of one, his assertion being that the purchase was made for the mere purpose of furnishing his daughter with a home.

His testimony is very considerably fortified by the fact that the transaction was consummated precisely in accordance with his intention as he explains it. He took the conveyance to himself, and gave his daughter merely the right of occupancy, and it does not appear that she found any fault with that arrangement until, after the lapse of several years, her father saw fit to assert his paramount title to the property.

Great reliance, however, seems to be placed upon the testimony of a considerable number of witnesses produced by the complainants, who testified to various statements by Plummer, both before and after the purchase was made, as to the purposes for which he was about to or had made it. It would serve no useful purpose for us to rehearse the testimony of these witnesses in detail. As to many of them, all we need say is, that what they testify to is not necessarily inconsistent with Plummer's version of the transaction. They testify to statements of Plummer that he was about to purchase or had purchased said house and lot for his daughter. Testimony of this character does not militate against the theory that he bought said property merely for the purpose of furnishing his daughter a home. In a very important sense, such purchase might be said to be made for her. A few witnesses do testify to statements by Plummer that he had bought the house and lot and given it to his daughter. But when we consider the exceedingly unsatisfactory nature of this species of testimony, consisting as it does of a mere statement of conversations which took place years before the witnesses were examined, we can not say that the court below was in error in refusing to regard them as constituting a sufficient corroboration of the testimony of Mrs. Schoonmaker to entitle her to a decree.

In our opinion the decree is fairly warranted by the evidence, and it will therefore be affirmed.

*Decree affirmed.*