In re Joseph S. LEFRAK, Debtor.

Alexander SCHACHTER, as Trustee of the estate of Joseph S. Lefrak, Plaintiff–Appellee,

v.

Joseph S. LEFRAK and Susan Lefrak, Defendant–Appellants.

No. 98 Civ. 2073(DLC).

United States District Court, S.D. New York.

Nov. 19, 1998.

---

Howard Karasik, Sherman, Citron & Karasik, P.C., New York City, for Appellants.

A. Peter Lubitz, Mitchell E. Sussman, Rosenman & Colin, LLP, New York City, for Appellee.

### OPINION & ORDER

COTE, District Judge.

Appellants Joseph and Susan Lefrak ("Joseph" and "Susan," respectively) appeal from the January 21, 1998, decision and judgment of the United States Bankruptcy Court for the Southern District of New York (Bernstein, J.) finding after a trial that the cooperative apartment at the heart of this action should be included in the property of Mr. Lefrak's bankruptcy estate for sale. For the reasons stated below, the judgment of the Bankruptcy Court is affirmed.

### BACKGROUND

The following facts were established at trial. Joseph and Susan married in 1952 and moved into Apartment 4D at 983 Park Avenue (the "apartment") in Manhattan in 1976. When the building was converted into a cooperative in 1982, Joseph purchased shares in 983 Tenants Corp. (the "corporation") and received a certificate for his shares. Joseph obtained a loan from Dime Savings Bank ("Dime") to finance the purchase, and pledged the shares and lease as security to Dime, which held the certificate in its possession.

In 1984, Joseph decided to give Susan a 50% ownership interest in the apartment (the "1984 transfer"). On September 17, 1984, Joseph wrote to the president of the corporation formally requesting the corporation's consent to the transfer of shares from Joseph to Joseph and Susan jointly. On October 3, 1984, the president gave Joseph the corporation's consent in writing, noting at the same time that "[p]ursuant to Paragraph 16a(v) of the Proprietary Lease it would seem that this consent is superfluous."

On October 9, 1984, Joseph wrote to Dime to request the bank's consent and aid in transferring the shares. Dime responded that it was in receipt of the "necessary documentation in order to change title," and

would forward these documents to its attorneys, Jackson & Nash. On December 18, 1984, Joseph had an associate in his law firm write to Jackson & Nash to obtain any documents that needed to be executed to effectuate the transfer. Appellants Joseph and Susan submitted no evidence of any further communication between Dime and themselves between that time and the fall of 1987, and no evidence that Dime or the corporation ever effected the transfer.

On September 2, 1987, Joseph wrote to the corporation's managing agent again to effectuate the transfer. In discussing this communication at trial, Joseph acknowledged that "at that point, [he] was technically, on the books of the corporation, sole shareholder." Joseph also wrote to Dime in September 1987, to renew his request that Susan's name be added to his Dime loan so that she would be liable for its repayment as well. On November 10, 1987, Joseph executed an assignment of the shares to Susan, and both appellants executed an acceptance and assumption agreement which was forwarded to Dime. In the meantime, however, Dime misplaced the relevant file and the stock certificate, and there was no evidence presented at trial to suggest that Dime ever completed the requested work to place Susan's name on Joseph's loan or to approve the transfer of shares.

Appellants challenge the Bankruptcy Court's finding that Susan was never made liable for Joseph's loan by citing portions of Joseph's testimony addressing two loans taken out by appellants jointly, but these loans were unrelated to the Dime loan in question. Joseph testified at trial that he "believed" that the acceptance and assumption agreement were delivered to the corporation, but no corroborative evidence was offered by appellants. Appellants also did not offer any evidence that the corporation indicated to Joseph or Susan that the transfer to joint ownership had occurred. Throughout this period and up to the present, Joseph paid the maintenance and debt service on the apartment solely in his own name.

In 1992, Joseph and Susan separated and Joseph moved out of the apartment. Joseph

testified that, pursuant to an oral separation agreement, he agreed to continue to pay the debt service and maintenance on the apartment. In addition, Joseph orally agreed to relinquish his shares in the apartment in favor of Susan (the "1994 transfer"). On October 24, 1994, Joseph wrote to the president of the corporation:

> Please be advised that I have relinquished my one-half interest in the stock and lease appurtenant to cooperative apartment 14D at 983 Park Avenue. Mrs. Susan Lefrak is now the sole owner of such stock and lease.

The corporation did not respond to Joseph's letter. After the bankruptcy proceeding commenced, however, counsel for the corporation wrote to Joseph on November 12, 1996, and confirmed that the board had previously approved the transfer of the apartment from Joseph alone to Joseph and Susan jointly. The letter noted further that "[a]lthough the ministerial act of effecting that transfer never occurred, it was the cooperative's intent that the transfer take place." It concluded that "no conveyance of the apartment can be accomplished without leave of the bankruptcy court."

The Chapter 7 Trustee for Joseph's estate filed this action on December 27, 1996, seeking a declaration that the apartment is property of the estate and may be used, sold, or leased by the Trustee pursuant to Section 363 of the Bankruptcy Code. Alternatively, the Trustee sought, among other things, to determine the validity of the property's transfer from Joseph to Susan under Section 544 of the Bankruptcy Code, or to recover a fraudulent conveyance of the apartment from Joseph to Susan. After a trial held on September 9, 1997, the Bankruptcy Court ruled from the bench that the 1994 transfer was unsuccessful because appellants failed to execute an assignment of the lease in accordance with the requirements of the corporation's proprietary lease and by-laws. In a memorandum opinion issued on January 21, 1998, the Bankruptcy Court then held that the 1984 transfer also failed because the shares were not delivered to Susan as required by the law of *inter vivos* gifts in New York State. Appellants appeal from both rulings.

## DISCUSSION

### 1. Standard of Review

■ A district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree." Rule 8013, Fed. R. Bankr.P. This Court must review the Bankruptcy Court's findings of fact under a "clearly erroneous" standard, *id.*, and its legal conclusions *de novo*. *See Liona Corporation v. PCH Associates,* 949 F.2d 585, 597 (2d Cir.1991); *In re Campbell Mills,* No. 95 CIV. 902, 1995 WL 581663, *2 (S.D.N.Y. Oct. 4, 1995).

### 2. The 1984 Transfer

■ The Bankruptcy Court properly analyzed the 1984 transfer under the law of *inter vivos* gifts in New York State and neither party challenges the application of this body of law. A valid *inter vivos* gift requires "intent on the part of the donor to make a present transfer; delivery of the gift, either actual or constructive to the donee; and acceptance by the donee." *Gruen v. Gruen,* 68 N.Y.2d 48, 505 N.Y.S.2d 849, 852, 496 N.E.2d 869 (1986). The proponent of a gift must prove each of these elements by clear and convincing evidence. *Id.* The Bankruptcy Court found both donative intent and acceptance to be present as to the 1984 transfer, and this Court will assume their presence as well for the purposes of this appeal. The central question addressed by the Bankruptcy Court, and at issue on appeal, is whether appellants demonstrated successful delivery of the shares to Susan.

■ As a general matter, delivery must be only

> as perfect as the nature of the property and the circumstances and surroundings of the parties will reasonably permit; there must be a change of dominion and ownership; intention or mere words cannot supply the place of an actual surrender of control and authority over the thing intended to be given.

*In re Szabo's,* 10 N.Y.2d 94, 217 N.Y.S.2d 593, 595, 176 N.E.2d 395 (1961) (citation omitted). In *Szabo's,* the New York Court of Appeals established that, in the case of stock shares, symbolic delivery is sufficient but

"must proceed to a point of no return, and this point can only be reached when there is a transfer of record on the stock books of the company." *Id.* Such notation on the books is necessary to demonstrate that the gift is truly irrevocable and the donor does not retain any beneficial interest in or control over the property given. *See Kaulbach v. Keoseian,* 783 F.Supp. 170, 176 (S.D.N.Y. 1992) (incomplete delivery where donor could have executed agreement to transfer legacy but did not do so, and thus retained dominion); *In re Carroll,* 100 A.D.2d 337, 474 N.Y.S.2d 340, 343–44 (2d Dep't 1984) (transfer on corporate stock book sufficient because control relinquished).

■ The shares of a cooperative corporation and the proprietary lease are inseparable and must be transferred together to make any transfer valid. *See United States v. 110–118 Riverside Tenants Corp.,* 886 F.2d 514, 517 (2d Cir.1989). Proof of delivery, therefore, must include delivery of both shares and lease. The Bankruptcy Court questioned appellants' proof of delivery of the lease to Susan, but assumed for the purposes of its opinion that such delivery had been made successfully.

As to the shares, the Bankruptcy Court found that the corporation never transferred Joseph's shares to Joseph and Susan jointly in its stock book; the Dime never closed the transaction sought by Joseph to place Susan on the mortgage loan; and Joseph did not offer any writing evidencing a clear and *present* intent to transfer irrevocably to Susan the title to one half of his shares. Accordingly, the Court found insufficient evidence of symbolic delivery to prove a valid gift.

On appeal, appellants challenge the Court's findings and conclusions as to the 1984 transfer arguing that: (1) the failure of the corporation to record the 1984 transfer in its book does not defeat Susan's ownership of one half of the stock; (2) the 1984 transfer was not a fraudulent conveyance; (3) the shares in the apartment are held in a constructive trust for Susan; (4) the Uniform Commercial Code ("U.C.C.") supports a finding of a valid transfer; (5) the Trustee's action is barred by a New York State statute of limitations; and (6) neither transfer may be avoided under Section 544 of the Bankruptcy Code. The Court will address each argument in turn.

■ Appellants cite numerous cases in which courts have held that the stock book of a corporation is not definitive evidence of ownership. For the most part, these cases are distinguishable from the instant matter because, even where the corporate books were not altered upon transfer, a clear and irrevocable transfer of control over the shares did occur. *See Chiaro v. Chiaro,* 213 A.D.2d 369, 623 N.Y.S.2d 312, 314 (2d Dep't 1995) (donees exercised complete control over co-op apartment after transfer); *In re Cristo,* 86 A.D.2d 700, 446 N.Y.S.2d 555, 556–57 (3d Dep't 1982) (shares signed by donor and donee and deposited with accountant and donor did not retain any interest or control over shares); *Application of Stewart Becker, Ltd.,* 94 Misc.2d 766, 405 N.Y.S.2d 571, 575 (N.Y.Sup.1978) (parties agreed that delivery of shares to escrow agent would complete transfer and thus shift dominion over shares irrevocably upon payment). Here, Joseph retained control over the shares in question such that, despite his intent to transfer, he could have reasserted his right to the entire apartment at any time and Susan would have had no basis in law to object. Even if the bright line rule of *Szabo's* did not govern this case, therefore, Joseph's transfer would still be invalid because he failed to give Susan any writing demonstrating his present intention to transfer his control over the shares to her without the possibility of revoking the gift. *Compare Gruen,* 505 N.Y.S.2d at 854, 496 N.E.2d 869 (letters to donee relinquishing title to painting sufficient symbolic delivery to support gift). The record reflects numerous indications of Joseph's intent to effect a transfer in the future, and even a reference to his having transferred the shares already in a 1994 letter to the corporation, but nothing in writing relinquishing title and control over the shares. None of the documents noted by appellants, including the Assignment and Acceptance of Assignment and Assumption of the proprietary lease (not the shares), suggests otherwise. To read the letters submitted by appellants at trial as evidence of irrevocable delivery would, in effect, equate delivery and intent

and thus read the delivery requirement out of the law.

Appellants argue that neither transfer is a fraudulent conveyance. The Bankruptcy Court's judgment, however, rested on a finding that the transfers were simply unsuccessful and not upon the law of fraudulent conveyances. This argument is thus unavailing.

■ Appellants assert that the shares in the apartment are held in a constructive trust for Susan and thus cannot be reached by the Trustee. Under New York law, a constructive trust may be found where there are (1) a confidential or fiduciary relationship; (2) a promise; (3) a transfer in reliance thereupon; (4) a breach of promise; and (5) unjust enrichment. *See Bontecou v. Goldman,* 103 A.D.2d 732, 477 N.Y.S.2d 192, 194–95 (2d Dep't 1984). The Bankruptcy Court found no basis in the record to find a constructive trust as to the 1994 transfer, and this Court finds the same to be true as to the 1984 transfer. Appellants failed to demonstrate the existence of any promise by Joseph to Susan when they moved into the apartment that the apartment would be owned jointly. As a result, no unjust enrichment will result from Joseph's estate obtaining the apartment to satisfy his creditors. The Court finds no basis to resort to this equitable remedy with respect to either transfer.

Appellants assert the relevance of three provisions of Article 8 of the Uniform Commercial Code ("U.C.C.") to the Court's analysis. No party appears to have argued at trial that the U.C.C. applies, and the Bankruptcy Court specifically declined to reach that question. Even on appeal, appellants do not explicitly assert that it should apply to cooperative corporation shares. Consequently, the Court will not reach the question of its applicability to the transaction at issue here.

■ Even assuming application of the U.C.C., however, the Bankruptcy Court correctly determined that a transfer did not occur. Section 8–313 governs transfers of securities. *See* N.Y.U.C.C. § 8–313. If Dime were considered a "financial intermediary" under Section 8–313(4), then the transfer failed because Dime did not "acquire

possession of a certificated security specially indorsed to or issued in the name of the purchaser [i.e., Susan]" under subsection (1)(c), or "send[ ] [Susan] confirmation of the purchase and also by book entry or otherwise identif[y] [the shares] as belonging to" Susan under subsection (1)(d). Appellants offered no evidence to suggest either such special indorsement or issuance in Susan's name or Dime's confirmation of her ownership. Otherwise, the transfer was incomplete because Susan did not "acquire[ ] possession" of the certificated security under subsection (1)(a), and Dime did not "acknowledge[ ] that [it] holds [the security] for" her under subsection (1)(e). These provisions of the U.C.C. provide no support for appellants' position on appeal.

Moreover, appellants' invocation of U.C.C. § 8–207(1), a provision addressing an issuer's right to treat the registered owner of a security as the rightful owner until the transfer is registered, is misplaced. In this case, there is no indication that the corporation acknowledged Susan's ownership in any fashion, and its rights under the U.C.C. are thus entirely irrelevant.

■ The appellants' suggestion that the Trustee's action is time-barred is also without merit. The Trustee seeks a declaration *on behalf of Joseph's estate* that the apartment is part of the estate, and the decision below is precisely such a declaration. The claim underlying the decision of the Bankruptcy Court thus is governed by Section 546(a) of the Bankruptcy Code, which, in pertinent part, allows such an action to be brought any time prior to "two years after the appointment of a trustee." *See* 11 U.S.C. § 546(a). *See also In re Princeton–New York Investors, Inc.,* 219 B.R. 55, 59 (D.N.J. 1998) (distinguishing limitations for claims on behalf of debtor's estate from those on claims brought as debtor's representative). Here, the Trustee was appointed on July 7, 1996, and filed his claims on December 27, 1996. The Trustee's claims were timely filed under the relevant statute of limitations.

Appellants argue that Section 544 of the Bankruptcy Code does not apply to the transfers here for a number of reasons. The Bankruptcy Court did not rely upon the

avoidance powers involved in Section 544, however, and instead simply found the transfer to have failed. Finding adequate support for that decision below, this Court need not decide whether Section 544 also applies to the instant case. In sum, the Bankruptcy Court's findings of fact and conclusions of law concerning the 1984 transfer were fully supported by the record and comported with New York State law.

### 3. The 1994 Transfer

The Bankruptcy Court held that the 1994 transfer was unsuccessful because appellants did not execute an instrument of assignment of the lease in accordance with Paragraph 16 of the proprietary lease. Appellants do not dispute that the 1994 transfer did not comply with the requirements of the corporation's proprietary lease and by-laws for the apartment. Instead, they argue that (1) assignment of a lease is valid as between a lessee and an assignee even if violative of restrictions on such assignment in the lease; (2) the corporation effectively waived the requirements of the proprietary lease and corporation by-laws; and (3) the restrictions on transfer in appellants' proprietary lease are rendered inapplicable under Section 8–204 of the U.C.C.

 The Court finds the 1994 transfer to be invalid as well. Putting aside the assignment of the lease, this transfer failed because appellants' transfer of the shares was incomplete. There is no dispute that appellants believed as of their separation in 1992 that Joseph had already transferred one half of his shares to Susan in the 1984 transfer. Joseph testified that upon their separation he orally agreed with Susan to continue to pay the maintenance and debt service on the apartment, and to transfer the survivorship interest in the apartment to Susan. Joseph completed only one act in furtherance of the transfer: on October 24, 1994, he wrote to the president of the corporation advising him that he had "relinquished" his interest in the shares to Susan. The corporation did not acknowledge Joseph's letter until November 1996, when counsel for the corporation acknowledged that the corporation had consented to the 1984 transfer but did not complete the "ministerial act of effecting that transfer." In addition, the 1996 letter noted as to any later transfer that "no conveyance of the apartment can be accomplished without leave of the bankruptcy court."

 Joseph's transfer of shares was ineffective whether considered as a gift or as the result of the oral agreement between Joseph and Susan. Clearly, Joseph did nothing in the 1994 transfer to relinquish his dominion over the shares or to make the transfer complete and irrevocable. He did not inspire any action by the corporation to record the transfer in ownership in the corporation's records or stock book. He continued to pay all maintenance and debt service on the apartment as he had done from the start of the couple's tenure in the apartment. As the oral agreement would be unenforceable under the statute of frauds, moreover, Joseph could have reasserted his rights to the apartment at any time and Susan again would have had little recourse. *See* N.Y. Dom. Rel. Law § 236(B)(3) (agreements as to marital property enforceable when "in writing"); N.Y. Gen. Oblig. Law § 5–703(1) (assignment of real property interest must be in writing). In short, Joseph failed to demonstrate a successful transfer of shares, thus defeating the 1994 transfer as a whole.

 The Bankruptcy Court's analysis of the transfer of the lease also fully supports its judgment. It is undisputed that appellants' failed to execute an assignment of the lease in accordance with the requirements of the proprietary lease and by-laws. Far from waiving these requirements as suggested by appellants, the corporation neither recorded the transfer nor supported appellants' position in the Bankruptcy Court that the transfer had in fact occurred. Furthermore, Joseph continued to pay the maintenance charges on the apartment. Appellants cite cases outside the cooperative corporation context for the proposition that an assignment by a lessee is not void, but simply voidable by the lessor. *See, e.g., Nipet Realty, Inc. v. Melvin's Rest. & Bar, Inc.,* 67 Misc.2d 790, 327 N.Y.S.2d 2 (N.Y.Civ.Ct. 1971). These cases are inapposite not only because cooperative apartment ownership is *sui generis,* but also because in the instant

case, the transfer did not simply violate a provision in the lease; it simply failed to occur. There is no evidence in the record of a transfer of or change in appellants' lease as part of the 1994 transfer. For this reason, appellants' invocation of Section 8–204 of the U.C.C. is also unavailing; even if the U.C.C. applies, it cannot manufacture a transfer where none existed.

## CONCLUSION

For the reasons set forth above, the judgment of the Bankruptcy Court is affirmed. The Trustee is entitled to a declaration that the apartment is the property of the estate.

SO ORDERED.