OPINION OF THE COURT
Charles J. Markey, J.
The present action concerning the ownership of a cooperative apartment (the co-op or co-op apartment) in Queens County, New York, raises an interesting issue of whether the turning over of keys to a dwelling and an alleged reference to it as “your new home” can be the basis for imposing a constructive trust of that house or apartment.
By order to show cause, dated June 12, 2009, the son, plaintiff Richard Carnivale moved for a preliminary injunction seeking to stop his eviction from the apartment by his father, defendant Rick Carnivale. The court, upon signing the order to show cause, included a temporary restraining order preventing the eviction. The court has read all the papers on the motion, including the memoranda of law and the posthearing submissions, considered the transcript of the testimony of the hearing of July 9, 2009 (hearing transcript), reviewed all the exhibits entered into evidence at the hearing, and conducted its own independent legal research.
Upon the foregoing papers, the son contends that in 1990 his father and his stepmother indicated to him that they would like to buy an apartment for him. The father bought apartment 1-E located at 34-43 60th Street in Woodside, Queens County. The son moved into the co-op on or about April 8, 1991. Shortly before the son moved in, the father handed the son the keys to the apartment in the presence of his son’s partner telling him that they were the keys to his new home. Counsel for both the father and the son stipulated that (1) none of the monies paid for the apartment came from the son and (2) the son did not attend the closing of the apartment.
The father disputes his son’s version. The father contends that, throughout his life, he purchased apartments in need of *880 renovation, fixed them, and sold them at a profit. (Hearing transcript at 11-12.) The father, according to his hearing testimony, bought this co-op apartment with the same intention to turn a profit, but then decided to allow his son to reside there, rent-free, provided that the son pay for the monthly maintenance or carrying charges imposed by the cooperative building (the co-op building) and any major repairs to the apartment. Significantly, the father kept title to the co-op shares and the proprietary lease in his own name and also kept them, at all times, in his possession.
Over the course of years, the father’s physical health and his relationship with his son both deteriorated. On September 24, 2007, the father sent the son an angry letter denouncing his son and informing him that he, the father, would be selling the coop, but offering the son the right to purchase it first. Following this letter, the son’s payments of monthly maintenance suddenly stopped for several months, prompting the co-op building’s property manager to write to the father on February 4, 2008, demanding payment of the maintenance for September 2007 through January 2008, plus late charges. The father’s eviction action against his son in the Housing Part of the Civil Court of the City of New York, Queens County, soon followed, and the son’s present action in this court seeking a preliminary injunction was then filed.
The son’s claim of ownership is essentially predicated on (1) the handing over of keys to the co-op apartment by the father, (2) an alleged ambiguous, but disputed, oral statement that the apartment is “yours,” and (3) a history of the son paying the apartment’s monthly maintenance for nearly 18 years. No writing exists to evidence an intention by the father of making the son the owner of the property. Probably realizing that his claim of ownership lacks the sort of written proof that would satisfy the statute of frauds, codified in General Obligations Law § 5-703, the plaintiff son’s theory of ownership of the co-op rests on theories of a gift and a constructive trust. The father contends that these creative claims of a gift of the co-op is a transparent and recently created ploy designed to frustrate the father’s pending eviction action.
Traditionally, a condominium was considered real property and a cooperative apartment was considered personalty. Contemporary notions have evolved as both federal and state courts tackle the myriad situations that pertain to co-op apartments. (See ALH Props. Ten v 306-100th St. Owners Corp., 86 *881 NY2d 643, 648 n [1995, Kaye, Ch. J.] [questions regarding sui generis ownership interests in cooperative apartments have “vexed courts — both State and Federal — in varying contexts”]; Newman v Valmar Elec. Co., 9 Misc 3d 450, 452 [Sup Ct, NY County 2005] [“Courts have labored inconclusively in deciding whether cooperative apartment ownership is an interest in real or personal property”]; accord In re Lefrak, 227 BR 222, 228 [SD NY 1998] [“cooperative apartment ownership is sui generis”], affg 215 BR 930, 934 [SD NY 1998].) Especially apt to this decision is the Appellate Division, Second Department’s opinion in Moloney v Weingarten (118 AD2d 836 [1986], lv denied 69 NY2d 608 [1987]), holding that contracts concerning co-op apartments must satisfy the statute of frauds (General Obligations Law § 5-703), although the lack of a writing will not bar an action to impress a constructive trust.
The documents that evidence ownership of a co-op apartment are the shares of the stock and a proprietary lease. (In re Lefrak, 227 BR at 226.) Both of those documents are in the father’s possession. Both of those documents reflect the father’s name as the sole owner. “When a parent pays the purchase price and takes title in the name of the child, there is a presumption of a gift.” (Brate v Hurt, 174 Ohio App 3d 101, 109, 880 NE2d 980, 986 [2007], citing Lieberman v Present, 94 Ohio App 451, 456, 115 NE2d 865 [1953]; accord Hill v Lamoreaux, 132 NJ Eq 580, 30 A2d 833 [Chancery Ct 1943] [father who paid all of the consideration for the house, but put the title to it in his daughter’s name, was held to have passed title to his daughter and was thus unsuccessful in rebutting the presumption that he made a gift].) In the present case, the certificate of co-op shares and the proprietary lease were placed in the father’s, not the son’s, name and always kept in the father’s possession.
In an attempt to show his active ownership of the co-op, the son has attached as an exhibit three letters, dated from 1991-1992, to the defendant co-op building’s board of directors or managing agent demanding attention to certain problems concerning the inside and outside of the building. These letters are a red herring and have no relevance to the issues. If anything, their submission serves to undermine the son’s position. If the son was so assertive against the board of the co-op building, then he should have similarly been insistent with his father in protecting his supposed gift. Specifically, the son, during the course of 18 years following the turning over of the keys, is not able to show even one writing — whether formal doc *882 ument, informal note, or letter, to or from his father or a third party — that would show that the father acknowledged that the co-op belonged to the plaintiff son.
In fact, contrary to the assertive tone of the plaintiff son’s letters addressed to the co-op building’s board, the son did not press his father to put the shares of the stock to the co-op apartment in his name, aside from the son’s allegations of oral conversations between the father and son on the subject. The son testified that when he was repeatedly urged by his life partner to raise the subject of changing title on the shares with the father, the son declined. The son testified at the hearing:
“And I told him’ [my partner] that my father is not the type of person who you want to push and aggravate because what he does — his first reaction is to rid [sic] you out of his life, so I didn’t want to press him signing the apartment to me even though he said I owned it 18 years ago.” (Hearing transcript at 35.)
The quotation from the hearing transcript is quite telling. Especially in a case where the plaintiff seeks to overcome the statute of frauds by claiming a gift or a constructive trust, the burden of proof is formidable, even though not insurmountable in an appropriate case. In the present action, not only is there no evidence of “pressing” the claim with the father, there is not even one writing to show that the son ever raised the subject with the father, his stepmother, or anyone else. Where the son has shown his assertiveness to complain of property issues with the co-op building, in a case where the defendant father’s health was at risk at one point, common sense would have dictated that the son should have been equally vigilant about protecting his alleged rights and interests concerning the co-op. He did just the opposite, as revealed by the aforementioned quotation from the hearing transcript. The son’s contemporaneous failure to have raised the issue head on with his father continued over many years, likely prompted so as to avoid the rejection of the claim of ownership manifested by the father in opposition to the present motion.
The son alleges that, for many years, he attended co-op building meetings and voted. Neither the son nor the father has subpoenaed evidence of these votes. Even if they had been produced at the hearing, such voting records would not have been conclusive, since the father could contend that he permitted his son to vote his shares by proxy.
*883 The son alleges that he paid for certain major appliances and renovations. First, the one workman that was produced to testify said that he was paid by the father. Putting that fact aside, even if, assuming arguendo, the son’s contentions were true, the payment by the son for major appliances and renovations is actually quite normal. The defendant father contends that he bought the apartment to make a quick profit, but his son was embroiled in financial difficulties.
The son, during 1990-1991, was a waiter who had a tax lien for not reporting accurately his tips and needed a place to stay. The defendant father permitted his son to stay in the apartment, provided that he pay monthly maintenance that, as conceded, was less than the prevailing amounts charged for rent. (Hearing transcript at 50.)
The court has resolved issues of credibility in favor of the defendant father. The plaintiff son’s testimony is corroborated solely by the account of his life partner. The partner testified that the father gave the keys of the apartment to his son, and said, “[h]ere [are] the keys to your new home,” and kissed him on both cheeks. First, the partner’s testimony is suspect. It is the testimony of a witness with heavy interest. The partner lives in the apartment and presumably would have a lot to gain financially by claiming that the property belonged to the son. Second, and even more important, even if that statement by the father had been made, the handing over the keys and even a reference to “your new home” hardly evidences a gift of a co-op or a house. Such a statement could have been made by a father to a debt-ridden son allowing him an affordable place to live.
Both the father and son testified as to a loan of approximately $10,000 made by the son to his father. The son testified that he orally forgave the indebtedness, saying to his father that he could not accept the loan’s repayment in light of the father’s past gift of the apartment. The father, in his testimony at the hearing, admitted the debt, but otherwise disputed the son’s account. The father testified that he had no intention of paying his son back since he had given a lot of money and other property to his son in excess of the loan amount.
In fact-appropriate situations affecting personalty, courts across the country have not hesitated to declare gifts or constructive trusts. Pertinent to the plaintiff son’s reliance on being given the keys to the co-op apartment, in Brackin v Brackin (894 NE2d 206 [Ind App 2008]), for example, the court held that delivery of the keys to a car by a husband to his wife *884 and a reference to it as a gift was enforceable by the wife even though the husband kept title to the vehicle in his own name. (Id., citing Restatement [Third] of Property § 6.2, Comment i [2003] and other cases; accord O’Fallon v O’Fallon ex rel. Ngar, 341 Ark 138, 14 SW3d 506 [2000].) In Plant v Plant (271 Ark 369, 609 SW2d 93 [Ct App 1980]), similarly, the court held that a gift of shares of stock was effectively made by a son to his father even though the son kept title to the shares in his own name. (Accord 12A Fletcher, Cyclopedia of Corporations § 5683 [2009].) Just like with a vehicle or shares of stock, it is conceivable that a court might consider an appropriate case of gift or constructive trust for a co-op apartment. (See e.g. Chiaro v Chiaro, 213 AD2d 369 [2d Dept 1995], lv denied 86 NY2d 708 [1995] [although no stock certificates to the co-op were delivered, appellate court found owners made gift by sufficient and irrevocable divesting of dominion over and control of their interest in the unit]; Zoob v Jordan, 841 A2d 761 [DC Ct App 2004] [husband took actual steps on the certificate of the apartment to show change of ownership to reflect wife’s interest].)
However, when the alleged “gift” of a cooperative apartment is analyzed under cases discussing real property, the son’s position in the present case is exceedingly weak, regardless of whether the theory advanced is gift, constructive trust, or promissory estoppel. This court’s independent legal research has found some helpful, persuasive cases. In Dellagrotta v Dellagrotta (873 A2d 101 [RI 2005]), the groom’s parents bought a house for their son and his bride. The parents kept title in their name. After the marriage broke down, the wife/bride claimed that the house was a gift to her, and she also maintained that she should be able to keep the house under theories of promissory estoppel and constructive trust. The Supreme Court of Rhode Island unanimously rejected the wife’s claims of ownership and allowed her only a portion of the appreciation of the house’s value based on improvements she made.
In Dellagrotta, rejecting theories based on promissory estoppel, the court stated: “When a gift consists of real property, the donor must manifest his or her intent by delivering a deed to the parcel.” (873 A2d at 110.) The court concluded that the statements made by the father of the groom/husband “did not manifest a clear and unambiguous promise to divest himself of dominion and control over the property.” (Id.) Rejecting the claims based on constructive trust, the court noted: “Confiden *885 tial or fiduciary relationships do not inherently exist between family members.” {Id. at 111.) Each case is fact-specific, and the circumstances of each case must be analyzed to determine “whether a confidential or fiduciary relationship was at work.” {Id.) The court found, in that case, that there was “no evidence establishing a pattern of [one party]’s reposing trust and confidence in [the other party].” {Id. at 112.)
The Supreme Court of Illinois reached a similar conclusion in Schoonmaker v Plummer (139 Ill 612, 29 NE 1114 [1892]). A father offered to provide his adult daughter with a home near him. Similar to the claims made here by the son, the father in Schoonmaker v Plummer requested his daughter to look at a house and, when she expressed her satisfaction with it, said: “That is all-sufficient. It is for you I am buying it.” (139 Ill at 615, 29 NE at 1114.) The father, however, kept title to the house in his name. The daughter and husband moved in and made improvements to the property less than the cost of what reasonable, prevailing rent would be. The trial court credited the father’s testimony that no gift was intended and that he made the purchase “for the mere purpose of furnishing his daughter with a home.” (139 Ill at 621, 29 NE at 1116.) The appellate court refused to disturb the trial court’s findings, noting “the exceedingly unsatisfactory nature of this species of testimony” (139 Ill at 621, 29 NE at 1116) and adding that the trial judge was “in a much better position to judge of their relative credibility than we can be.” (139 Ill at 618, 29 NE at 1115.) The appellate court added, in language applicable to the instant case, that the father “took the conveyance to himself, and gave his daughter merely the right of occupancy; and it does not appear that she found any fault with that arrangement until, after the lapse of several years, her father saw fit to assert his paramount title to the property.” (139 Ill at 621, 29 NE at 1116.)
In Pesovic v Pesovic (10 Ill App 3d 708, 295 NE2d 261 [1973]), the appellate court, affirming the lower court, held that the evidence was insufficient to establish either a contract to convey or an oral gift of a house by a father to his adult son. The court stated that specific performance of a contract to convey land requires one that is unambiguous and was “certain in all its terms so that a court can specifically enforce it.” (10 Ill App 3d at 711, 295 NE2d at 264.) The court, rejecting the claim of an oral gift of land, continued:
“One who claims to be a donee has the burden of proving all the facts essential to a valid gift. To *886 prove a valid, gift, the evidence must show delivery to the donee with intent of the donor to pass title absolutely and irrevocably and relinquish all present and fixture dominion over the gift. A gift that is capable of legal conveyance but is not made the subject of a conveyance is revocable.
“An oral gift of land does not pass title to the donee. This is true even where the gift is accompanied by possession, unless the possession is continuously adverse to the donor for the statutory period, or after taking possession the donee with his own means makes permanent and valuable improvements, or there are such facts as would make it a fraud on the donee not to enforce the gift.” (10 Ill App 3d at 712, 295 NE2d at 265 [citations omitted].)
To similar effect, the court in Tippenhauer v Tippenhauer (158 Ky 639, 642, 166 SW 225, 227 [1914]) refused to fxnd an oral gift of real property by a father to a son, holding that the arrangement was simply “an accommodation to enter and occupy a house or land without consideration and under a verbal consent.” Any claim of adverse possession, the court continued, would have to be proved by clear acts to show the assertion of a hostile claim for the statutory period. (Id.; accord In re Lefrak, supra, 227 BR 222 [1998] [rejecting claims of gift and constructive trust concerning a cooperative apartment]; Rayl v Central Trust Co., 127 Kan 131, 272 P 147 [1928] [evidence held insufficient to establish a gift of real property by father to son].)
In the present case, the son’s evidence to support his claim is weak. The son’s payment of monthly maintenance and of related expenses is consistent with the arrangement to provide for the upkeep of an affordable place to live, rather than pay high rent elsewhere. In declining to impose a constructive trust regarding the ownership of a co-op apartment, the court in Gorelik v Sobol (20 Misc 3d 1134[A], 2008 NY Slip Op 51725[U], *6 [Sup Ct, Kings County 2008, Schack, J.]), recognized that “[w]herever the [plaintiffs] lived, they would have to pay rent, maybe at a higher amount than what they paid.”
This court thus rejects the imposition of a constructive trust of a co-op based on monthly maintenance payments. In no meaningful way can the son claim that the father was “unjustly enriched” by the monthly maintenance payments. Since “unjust enrichment” is at the heart of a constructive trust cause of action, the plaintiffs motion for a preliminary injunction must fail. (See Thornton v McGrath, 277 AD2d 14 [1st Dept 2000] *887 [upholding dismissal of cause of action for constructive trust of a co-op apartment].) Crediting the fact that the father bought and sold apartments to swing a profit, the father in this case forbore from his practice in order to allow his son an affordable place to live.
The plaintiff quotes at great length from Panetta v Kelly (17 AD3d 163 [1st Dept 2005], lv dismissed 5 NY3d 783 [2005]), where the appellate court held that numerous factual issues prevented summary judgment dismissing an action for constructive trust of a co-op apartment. Panetta is inapposite. In that case, the plaintiff provided substantial money for the acquisition of the co-op and related expenses, aside from paying the monthly maintenance. In this case, however, the plaintiff son’s claims hang on the gossamer thread of the father handing over of keys to an apartment, an ambiguous oral reference to “your new home” — where the financially indebted plaintiff had few other alternatives, and alleged kisses by his father on both cheeks. If the account provided by the plaintiff son in his testimony were true, arguendo, the son should have taken contemporaneous legal measures so that the proclaimed signs of affection were substantiated by enforceable action. (See Bankers Sec. Life Ins. Socy. v Shakerdge, 49 NY2d 939 [1980] [ambiguous statements to provide for loved ones were insufficient to justify imposition of a constructive trust].)
On the basis of this not only slim, but anorexic, record with paltry evidence, to permit the plaintiff son’s claim would essentially do violence to the statute of frauds. More important, plaintiff, in trying to forge a theory for ownership of the co-op, has forgotten the purpose of a constructive trust. As explained with memorable eloquence by Judge Cardozo in Beatty v Guggenheim Exploration Co. (225 NY 380, 386 [1919]):
“A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee (Moore v. Crawford, 130 US 122, 128; Pomeroy Eq[uity] Jurisprudence] sec. 1053).”
As observed by Cardozo’s statement, the purpose of a constructive trust is to help rectify frauds. Nothing in the facts of this case outrages the bounds of moral sensibilities and fair dealings. The money for the purchase of the apartment came *888 from the defendant father, entirely. The plaintiff son gave up nothing to live in that apartment. If during the course of the past 18 years that the plaintiff son resided in the apartment, he chose not to pursue his father on an indebtedness of $10,000, that was his, the son’s, choice to enforce or forgive.
The son, at all times, knew that he was not in possession of the actual shares of stock to the co-op and its proprietary lease. He knew that his father possessed them. He also knew, for 18 years, that title in both the co-op shares and the proprietary lease was solely in the name of his father. The son acquiesced in the arrangement. If the son remained silent, it may have been because he knew that he was not given the apartment as a gift and did not want to risk enraging his father for fear that he might have been tossed out of the apartment sooner rather than later.
Use of the cause of action for constructive trust should not be distorted by courts as a device for enforcing an alleged intent to confer a benefit, gain, gift, or a material expression of love. A constructive trust cause of action should not be abused and misused as a means of redressing disappointed expectations, frustrated intentions, and failed hopes. In the present case, the defendant father purchased the property entirely from his own funds. There was no duplicity or fraud practiced by the father on his son, and the father cannot be said to have been “unjustly enriched.” To the contrary, the evidence reveals an attempt by a father to find a housing solution for his son at a time of great financial distress for his son. Requiring that his son pay the coop’s monthly maintenance and to help the upkeep of the property was a normal condition tacked on by the father for the arrangement. The imposition of a constructive trust on the present facts is not only improper, but plainly wrong. In fact, to find a constructive trust under these facts would shock the conscience.
The court, accordingly, denies, in all respects, the plaintiffs motion for preliminary injunction, since the plaintiff cannot demonstrate a likelihood of success, irreparable injury, or a balancing of the equities tipping in his favor. (See Doe v Axelrod, 73 NY2d 748, 750 [1988].) The court hereby vacates all previous stays and restraints.
Cases such as the instant suit that show ruptures of familial ties are upsetting to the litigants as well as to the courts that have to adjudicate the disputes. In Pesovic v Pesovic (supra, 10 Ill App 3d 708, 295 NE2d 261 [1973]), the appellate court, de *889 spite affirming that the real property belonged to the father, noted that the son lost his right eye and left hand by a landmine when he was only 12, the eviction ordered by the trial court and affirmed on appeal affected him, his wife, and their three young children, and the son, acting pro se at the trial, supported his contention “that he had been the victim of an injustice at the hands of his father.” (10 Ill App 3d at 713, 295 NE2d at 265.) In Dellagrotta v Dellagrotta (supra, 873 A2d 101 [2005]), the appellate court similarly observed that what had started as “a lovely home” required the court to adjudicate “the decaying carrion” of a failed and moribund relationship. (Id. at 104; accord Isaacs v Isaacs, 193 AD2d 468 [1st Dept 1993] [owner of cooperative apartment did not make gift of his interest to his daughter-in-law, but appellate court observed that the effort in that case to evict her and her children “may well be inconsistent with the landlord’s duty of good faith and fair dealing”].)
Those persuasive cases remind us that, notwithstanding bitter allegations and personal injustices that have been committed between the parties, a judge’s constitutional duty is to set aside any sympathies and apply the law. In the present case, all of the plaintiffs various theories of relief for ownership of the co-op are factually weak, legally insufficient, and not cognizable.